HILL v HUSKY BRIQUETTING, INC.

PRODUCTS LIABILITY—MANUFACTURED PRODUCTS—WARNINGS—STAN-
DARD OF CARE IN TRADE OR INDUSTRY.

A manufacturer who has undertaken to explain or give warnings
on the label concerning the use or propensities of its product
has not discharged its duty, as a matter of law, to make a
statement which is adequate under all the facts and circum-
stances where the explanation or warning is "the average
standard in the industry"; the adequacy of the warning must
be determined by the jury and a directed verdict in favor of the
defendant manufacturer of charcoal briquettes was error where
pleadings and stipulations of the parties showed that a bag of
briquettes bore the legend on the bottom of both sides "CAU-
TION—FOR INDOOR USE—COOK ONLY IN PROPERLY
VENTILATED AREAS" and death and injury resulted after
plaintiff was using defendant's briquettes in a grill or brazier in
a bedroom to provide heat for both herself and her children.

Appeal from Wayne, J. Richard Ernst, J. Sub-
mitted Division 1 March 5, 1974, at Detroit.
(Docket No. 16101.) Decided June 24, 1974. Leave
to appeal granted and Court of Appeals affirmed,
393 Mich —.

Complaint by Helen R. Hill, for herself and as
administratrix of the estate of Anita L. Hill, de-
ceased, and as next friend of Betty Jo Hill, a
minor, against Husky Briquetting, Inc., for dam-
ages resulting from the wrongful death of Anita L.
Hill and injuries to Betty Jo Hill. Directed verdict
for defendant. Plaintiffs appeal. Reversed and re-
manded for trial.

REFERENCES FOR POINTS IN HEADNOTE
63 Am Jur 2d, Products Liability §§ 53–56.
Liability of manufacturer or seller for injury caused by firearms,
explosives, or flammables. 80 ALR2d 488.
Manufacturer's or seller's duty to give warning regarding product
as affecting his liability for product-caused injury. 76 ALR2d 9.

*Kozlow, Jasmer & Woll,* for plaintiffs.

*Harvey, Kruse & Westen, P. C.,* for defendant.

Before: DANHOF, P. J., and BRONSON and BOYLE,*
JJ.

BRONSON, J. Plaintiffs are appealing from a directed verdict entered in favor of defendant prior to the impaneling of the jury.[1] Certain facts relevant to decision of a controlling point of law were stipulated by the parties.

Plaintiffs commenced their action against the defendant charcoal briquette manufacturer and others[2] for the wrongful death of Anita L. Hill and injuries to Betty Jo Hill.

Helen R. Hill, mother of the deceased and injured children, was using defendant's briquettes in a grill or brazier in their bedroom to provide heat for both herself and the children. Mrs. Hill's husband left her during 1970 and she was receiving sustenance for herself and her five children from Aid to Families with Dependent Children. Mrs. Hill was purchasing an old home in Detroit for which ADC had provided the requisite down payment. This home had formerly been heated by a gas space heater but, following a long running dispute concerning the gas bill, the gas had been cut off. The termination of the gas supply occurred some weeks prior to the incident presently in question. The previously mentioned gas heater was

---

* Circuit judge, sitting on the Court of Appeals by assignment.

[1] This unusual procedure was consented to by the plaintiff in order to settle questions of law on stipulated facts and to preclude the necessity of a long trial in the event the ruling was adverse.

[2] The remaining defendants were dismissed upon various motions prior to trial and are not therefore involved in this appeal.

the only source of heat, there being no usable furnace anywhere else in the house.

The bag of briquettes bore the following legend at the bottom of both sides: *"CAUTION—FOR INDOOR USE—COOK ONLY IN PROPERLY VENTILATED AREAS"*

It was stipulated by the parties for purposes of this motion that there were no other precautionary words, warnings, instructions, or other directions on the package of briquettes.

The parties further stipulated that Mrs. Hill had read and understood this language and that before retiring she "cracked open" a window in the bedroom. Mrs. Hill was not sure whether the window was still cracked open in the morning.

Upon arising in the morning, the family having slept late because it was Thanksgiving, Mrs. Hill found that Anita, age 11, had expired and that other members of the family needed emergency care. One daughter, Betty Jo, required in-patient treatment at the hospital.

Again for purposes of this motion the parties stipulated that the briquettes manufactured by defendant have as burning characteristics the fact that they consume oxygen, leaving fumes of carbon monoxide and carbon dioxide in its place. These gases are colorless and thus invisible, as well as odorless. They are noxious when accumulated and potentially lethal. Plaintiff and defendant stipulated further that defendant's evidence would show that there were approximately 20 charcoal briquette manufacturers in the United States, and that before January 1, 1966, none of them provided any warning or instruction on their bags at all. After that date, partly because the same became a requirement of a New York stat-

ute,[3] the quoted words were used by most charcoal manufacturers.

Many states legislate minimum standards of labeling regulating particular types of products. The policy inherent in these acts is that it is often beneficial to the particular consumer and the general public to provide a higher and surer degree of protection than is provided by the common law remedies. See, generally: Frumer and Friedman, Products Liability, § 8.07[1], pp 186.30–186.31. Commenting on these statutes, Frumer and Friedman concluded:

"Many of these statutes, ordinances and regulations are pertinent to the duty to warn. They do not necessarily impose any greater general duty than does the present common law. But they may set out minimum standards for labeling, violation of which is negligence per se, or at least evidence of negligence." (Citations omitted, Frumer and Friedman, Products Liability, § 8.07[1], pp 186.31–186.32.)

---

[3] The New York statute referred to by the parties provides, in pertinent part:

"§ 197-*l*. Charcoal

"Charcoal and charcoal briquettes shall be sold by weight and each container in which charcoal or charcoal briquettes is sold or delivered in .quantities of one hundred pounds or less shall be plainly and conspicuously marked to show the net quantity of the contents in letters and figures commensurate with the size of the container as shall be determined and fixed by the commissioner of agriculture and markets, and shall also bear the legend 'CAUTION—FOR INDOOR USE—COOK ONLY IN PROPERLY VENTILATED AREAS', or a substantially similar legend as may be approved by the commissioner, in a size commensurate with the size of the container and so placed on the container as shall be determined and fixed by the commissioner. This section shall apply to the city of New York, the provision of section one hundred ninety-seven-m of this article notwithstanding."

(1966 New York Session Laws, Ch 569, approved and effective June 14, 1966.) The version of the above legend as printed in the annotated laws differs in a material respect. The annotated version of § 197-*l* "Charcoal" quotes the legend without the second dash as: "CAUTION —FOR INDOOR USE COOK ONLY IN PROPERLY VENTILATED AREAS". The difference in emphasis which this provides could be significant.

The legend above quoted demonstrates that the defendant has undertaken to warn or instruct consumers concerning the proper use and propensities of its products. The sole question for our review on this record is to determine whether the legend was adequate. We state the issue as:

*Where a manufacturer of a product undertakes to explain or give warnings on the label concerning the use or propensities of its product and the explanation or warning is stipulated to be "the average standard in the industry", has the manufacturer,* as a matter of law, *discharged its assumed duty to make a statement which is adequate under all the facts and circumstances?*

In its determination of the motion for directed verdict the trial court relied upon *Barton v Myers,* 1 Mich App 460; 136 NW2d 776 (1965). The *Barton* decision involved a warning label on contact bond cement. The defendant in *Barton* apparently proved that the warning on the label complied with the standard of the industry. Plaintiff claimed that the warning supplied was not adequate. The *Barton* Court affirmed the directed verdict for the defendant at the close of proofs, citing *Cheli v Cudahy Brothers Co,* 267 Mich 690, 695; 255 NW 414 (1934), for the proposition that "no one is held liable to a higher degree of care than the average in the trade or business in which he is engaged".

Dean Prosser, in his treatise on torts, has placed the relationship of custom and the industry standard, as it applies to the standard of reasonable conduct test, in proper perspective.[4] Dean Prosser concluded that an industry may not be allowed to

---

[4] "Since the standard is a community standard, evidence of the usual and customary conduct of others under similar circumstances is normally relevant and admissible * * * . Custom also bears upon what others will expect the actor to do, and what, therefore, reasona-

set its own standard without incurring the possibility that careless practices will be perpetuated.

Further relevant comments are found in Frumer and Friedman, Products Liability, wherein the authors discuss the different functions of instructions for use and warnings on labels, concluding:

"There is substantial authority that the manufac-

---

ble care may require him to do; upon the feasibility of taking precautions, the difficulty of change, and the actor's opportunity to learn the risks and what is called for to meet them.

"In a particular case, where there is nothing in the evidence or in common experience to lead to the contrary conclusion, this inference may be so strong that it calls for a directed verdict on the issue of negligence. * * * Some few courts formerly made the effort to treat all customs in this manner, and to enlarge the normal inference into an 'unbending test' of negligence, under which the ordinary usages of a business or industry became the sole criterion as to what the actor should, as a reasonable man, have done.

"Such an arbitrary rule proved in the long run impossible to justify. First of all, customs which are entirely reasonable under the ordinary circumstances which give rise to them in the first instance, may become entirely unreasonable in the light of a single fact altering the situation in the particular case. * * * But beyond this, customs and usages themselves are many and various; some are the result of careful thought and decision, while others arise from the kind of inadvertence, carelessness, indifference, cost-paring and corner-cutting that normally is associated with negligence. There can certainly be such a thing as customary negligence, as the unchecked habit of jaywalking in some communities will suggest.

"*Even an entire industry, by adopting such careless methods to save time, effort or money, cannot be permitted to set its own uncontrolled standard.* The fact that all other beverage bottlers use the same slipshod methods cannot serve as absolution for the bottler who is being sued. And if the only test is to be what has been done before, no industry or group will ever have any great incentive to make progress in the direction of safety. Cases will no doubt be infrequent in which any defendant will be held liable for failing to do what no one in his position has ever done before; but there appears to be no doubt that they can arise. Much the better view, therefore, is that of the great majority of the cases, that every custom is not conclusive merely because it is a custom, and that it must meet the challenge of 'learned reason,' and be given only the evidentiary weight which the situation deserves. It follows that where common knowledge and ordinary judgment will recognize unreasonable danger, what everyone does may be found to be negligent; and that there will be extreme cases where it is so clearly negligent in itself that it may even be excluded from evidence." (Citations omitted; emphasis supplied.) Prosser, Torts (4th ed), pp 166–168.

turer must give both adequate directions for use and adequate warning of potential danger. Directions and warnings serve different purposes. Directions are required to assure *effective* use, warnings to assure *safe* use. It is clear from the better-reasoned cases that directions for use, which merely tell how to use the product and which do not say anything about the danger of foreseeable misuse, do not necessarily satisfy the duty to warn." (Emphasis in original—citations omitted.) Frumer and Friedman, Products Liability, § 8.05, pp 186–186.1.[5]

The text writers disagree with the result of the majority in *Barton. Barton* itself contains the seeds of its own destruction. The concurring opinion of now Justice T. G. KAVANAGH declared that:

" * * * [T]he better rule is that the reasonableness of care should be determined by the jury in accord with the principle enunciated by Mr. Justice Holmes in *Texas & P R Co v Behymer,* 189 US 468; 23 S Ct 622; 47 L Ed 905 (1903), at page 470".

Justice KAVANAGH concluded that negligence should seldom if ever be determined as a matter of law.

*Barton* was subjected to further criticism and limited in both *Witt v Chrysler Corp,* 15 Mich App 576; 167 NW2d 100 (1969), and *Farr v Wheeler Manufacturing Corp,* 24 Mich App 379; 180 NW2d 311 (1970). Finally, it must be regarded as at least limited to the facts by the Michigan Supreme Court's decision in *Marietta v Cliffs Ridge, Inc,* 385 Mich 364; 189 NW2d 208 (1971), wherein the Court, discussing *Witt,* said:

"The standard by which the negligent or nonnegligent character of the defendant's conduct is to be

---

[5] Adequacy of required warning. *See, generally:* 1 American Law of Products Liability, § 2:40, *et seq.;* Dillard and Hart, *Product Liability: Directions for Use and the Duty to Warn,* 41 Va L Rev 145 (1955).

determined is that of a reasonably prudent man under the same or similar circumstances. *McKinney v Yelavich,* 352 Mich 687; 90 NW2d 883 (1958). *The customary usage and practice of the industry is relevant evidence to be used in determining whether or not this standard has been met. Such usage cannot, however, be determinative of the standard.* As stated by Justice Holmes:

" 'What usually is done may be evidence of what ought to be done, but what ought to be done is fixed by a standard of reasonable prudence, whether it usually is complied with or not.' *Texas and Pacific R Co v Behymer,* 189 US 468, 470; 23 S Ct 622; 47 L Ed 905 (1903).

"The danger inherent in allowing an 'industry' standard to be the sole criteria for determining whether or not the defendant exercised due care was recognized in *Witt v Chrysler Corp,* 15 Mich App 576, 583; 167 NW2d 100 (1969):

" 'To adopt this view would permit the industry to set its own standard of care.' "

Similarly, Judge Learned Hand also enumerated the dangers of allowing an industry standard to be determinative of negligence:

" 'Indeed, in most cases reasonable prudence is in fact common prudence; but strictly it is never its measure; a whole calling may have unduly lagged in the adoption of new and available devices. It may never set its own tests, however persuasive be its usages.' *The T J Hooper,* 60 F2d 737, 740 (CA 2, 1932).

*"The question of whether the defendant in fact met the standard of reasonable prudence required of him is ordinarily one for the jury:*

" ' "It is only where the facts are such that all reasonable men must draw the same conclusion from them, that the question of negligence is ever considered one of law for the court." ' *Ackerberg v Muskegon Osteopathic Hospital,* 366 Mich 596, 600; 115 NW2d 290 (1962), quoting *Grand Trunk R Co v Ives,* 144 US 408, 417; 12 S Ct 679; 36 L Ed 485." (Emphasis supplied.) *Marietta v Cliffs Ridge, Inc,* 385 Mich 364, 369–370; 189 NW2d 208 (1971).

The reasoned rule expressed by the commentators and supported fully by *Marietta* requires that the question of adequacy of the warning be determined by the jury.[6] In this case and on this record the facts were not so clear that all men would draw the same conclusion. The question, although close, is properly for the jury to consider.

Reversed and remanded for trial. Costs to plaintiff-appellant.

All concurred.

[6] *Accord: Tampa Drug Co v Wait,* 103 So 2d 603 (Fla, 1958); *Edwards v California Chemical Co,* 245 So 2d 259 (Fla, Dist Ct of App, 1971); and *Thomas v Arvon Products Co,* 424 Pa 365; 227 A2d 897 (1967).