SMITH v E. R. SQUIBB & SONS, INC.

1. PRODUCTS LIABILITY—EVIDENCE—PROOF OF DEFECTS—MANUFAC-
   TURER OF PRODUCTS—PROOF OF INJURIES—IMPLIED WARRANTY.

   Proof of a defect in a product attributable to the product's
   manufacturer and proof of an injury resulting from that defect
   are two of the elements of proof essential to a cause of action
   against the product's manufacturer based on a breach of im-
   plied warranty.

2. PRODUCTS LIABILITY—FREE OF DEFECTS—FAILURE TO WARN—DAN-
   GERS IN PRODUCT'S USE.

   A product which is otherwise free from defect can be defective
   because of the manufacturer's failure to warn of dangers associ-
   ated with the product's use.

3. PRODUCTS LIABILITY—IMPLIED WARRANTY—NEGLIGENCE—THEORIES
   OF RECOVERY.

   It is not necessary for a plaintiff seeking recovery under an
   implied warranty theory to prove negligence since implied
   warranty and negligence are separate and distinct theories of
   recovery.

4. PRODUCTS LIABILITY—DUTY TO WARN—DRUG MANUFACTURERS—
   DANGEROUS PROPENSITIES OF PRODUCTS—TEST OF REASONABLE-
   NESS.

   It is the duty of an ethical drug manufacturer to warn the
   medical profession of any dangerous propensities of the drug

REFERENCES FOR POINTS IN HEADNOTES

[1, 3, 5] 63 Am Jur 2d, Products Liability §§ 9, 15–21.
[2, 4, 6–8] 63 Am Jur 2d, Products Liability §§ 57–61.
   Manufacturer's or seller's duty to give warning regarding product
      as affecting his liability for product-caused injury. 76 ALR2d 9.
   Manufacturer's or seller's duty as to product design as affecting his
      liability for product-caused injury. 76 ALR2d 91.
[9] 5 Am Jur 2d, Appeal and Error §§ 807, 817.
[10] 29 Am Jur 2d, Evidence § 134.
[11] 58 Am Jur 2d, New Trial §§ 212, 213.
[12] 5 Am Jur 2d, Appeal and Error § 835.

which are known or should be known to the manufacturer; the sufficiency of the warning is a matter of reasonableness and, as such, it is generally a question for the trier of fact.

5. PRODUCTS LIABILITY—NEGLIGENCE—JURY—ADEQUACY OF WARNINGS—STANDARD—UNREASONABLE RISKS OF HARM.

The standard by which a jury is to determine the adequacy of a manufacturer's warning of a product's potential danger is the general negligence standard that liability is created by conduct which falls below the standard established by law for the protection of others against unreasonably great risks of harm.

6. EVIDENCE—PRODUCTS LIABILITY—DUTY TO WARN—DANGEROUS PROPENSITIES OF PRODUCTS—DISCHARGE OF DUTY—DEGREE OF RISK—DIFFICULTIES IN WARNING.

The type of evidence considered in determining whether a drug manufacturer's duty to warn the medical profession of any dangerous propensities of a drug which are known or should be known to the manufacturer has been discharged will include the degree of risk posed by the drug's dangerous propensities and the difficulties inherent in bringing the warning home to the medical profession.

7. PRODUCTS LIABILITY—IMPLIED WARRANTY—REASONABLE CARE— FAILURE TO WARN—REASONABLE UNDER THE CIRCUMSTANCES— DANGEROUS PROPENSITIES OF PRODUCTS.

The tort concept of reasonable care is applicable to an implied warranty theory of recovery where the alleged defect in a product is really a failure by the manufacturer of the product to provide a warning "reasonable under the circumstances" of the product's dangerous propensities, although the concept of warranty is not based on a failure to exercise reasonable care.

8. PRODUCTS LIABILITY—NEGLIGENCE—JURY—WARRANTY THEORY— FAILURE TO WARN—DANGEROUS PROPENSITIES OF PRODUCTS.

A trial court did not commit reversible error in submitting a case to the jury on only a negligence theory where the plaintiff's warranty theory of a defendant manufacturer's liability was based solely upon the alleged failure of the manufacturer to give a warning of a product's dangerous propensities which was "reasonable under the circumstances", thus making the proofs necessary to recover the same under both theories.

9. APPEAL AND ERROR—TRIAL—IMPROPER ARGUMENTS—STANDARDS OF REVIEW—EXTREME PREJUDICE.

Appellate review of allegedly improper, but unobjected to, argu-

ment is limited to a determination of whether the statements were so extremely prejudicial that even a correction by the court would not undo the harm.

10. EVIDENCE—SUBSEQUENT REMEDIAL MEASURES—NEGLIGENCE—CULPABLE CONDUCT.

Evidence of subsequent remedial measures is generally not admissible when offered to prove negligence or culpable conduct on the part of a defendant.

11. TRIAL—NEW TRIAL—JUDGES—DISCRETION.

The granting or denial of a new trial lies within the sound discretion of the trial judge.

12. APPEAL AND ERROR—VERDICTS—GREATER WEIGHT OF EVIDENCE—OVERWHELMING WEIGHT OF EVIDENCE.

The test for granting appellate relief on the ground that a verdict was against the great weight of the evidence is whether or not the verdict was against the overwhelming weight of the evidence.

Appeal from Wayne, Nathan J. Kaufman, J. Submitted November 14, 1975, at Detroit. (Docket No. 19119.) Decided June 14, 1976. Leave to appeal applied for.

Complaint by Eddie Smith, Jr., as the Administrator of the Estate of Shirley Smith, deceased, against E. R. Squibb and Sons, Inc., St. Joseph Mercy Hospital, Anthony E. Kozlinski, M. D., Edward Dolan, M. D., and Maria Scerhelmi, M. D., for damages for the wrongful death of plaintiff's decedent. Judgment on a directed verdict was entered in favor of defendant Kozlinski and a judgment of no cause of action was entered as to the other defendants. Plaintiff appeals as to the judgment entered in favor of defendant Squibb. Affirmed.

*Barbara, Wisok, Ruby & Domol, P. C.,* for plaintiff.

*Plunkett, Cooney, Rutt, Watters, Stanczyk &*

*Pedersen* (by *W. P. Cooney* and *John P. Jacobs),* for
defendant E. R. Squibb and Sons, Inc.

Before: BASHARA, P. J., and D. F. WALSH and
W. S. WHITE,* JJ.

D. F. WALSH, J. This is a wrongful death action
in which a Wayne County jury returned a verdict
of no cause of action in favor of the defendant
E. R. Squibb and Sons, Inc.[1] Indisputably the dece-
dent's death followed the injection of a drug manu-
factured by Squibb. There was no question of any
defect in the manufacture of the drug itself, nor of
its beneficial qualities when administered as pre-
scribed. The plaintiff contends, however, that
Squibb failed properly to warn the medical profes-
sion of the dangerous propensities of the drug and
of precautionary measures which should be taken
following its administration.

On April 14, 1969, plaintiff's decedent Shirley
Smith visited her physician, Dr. Kozlinski, com-
plaining of pains on her right side. A possible
right pyelonephritis (inflammation of the kidney)
was diagnosed and the patient was referred to St.
Joseph Mercy Hospital for an intravenous pyelo-
gram test (essentially a kidney X-ray). This partic-
ular test involves the injection of an X-ray con-
trast medium, Renografin-60 into the veins. As a
contrast medium, Renografin-60 helps to visualize
the operation of the kidneys during the X-ray
procedure. Dr. Scerhelmi administered the drug to
the decedent. Following the injection Mrs. Smith
became nauseous, began foaming at the mouth,

---

* Circuit judge, sitting on the Court of Appeals by assignment.

[1] The plaintiff instituted this action against all of the above-cap-
tioned defendants—Squibb (the manufacturer of the drug), Dr. Kozlin-
ski (the treating/referring physician), Dr. Dolan (radiologist at St.
Joseph Mercy Hospital), Dr. Scerhelmi (who administered the drug)
and St. Joseph Hospital. Squibb remains as the only defendant on
appeal.

slipped into acute anaphylactic shock[2] and fainted. Despite efforts taken to revive her Mrs. Smith eventually expired and the cause of death was determined to be acute anaphylactic reaction.

Renografin-60, a 60% iodine solution manufactured by Squibb, was shipped to St. Joseph Hospital in nested cases of 25 bottles, each bottle or vial containing 30 cc. Warning slips[3] were loosely packed within each case but were not attached to the vials themselves, and no warning of any kind appeared on the vial labels. While the cases of Renografin-60 were stored in the hospital's pharmacy, the individual bottles were placed in the X-ray rooms. Thus no warning at all accompanied the bottles to the X-ray rooms where the drug was customarily administered.

It was developed at trial that, aside from the package inserts, there were at least two other methods of conveying information, warnings and instructions as to the use of Renografin-60 to those who used the drug. The first is by publishing the information in the Physicians' Desk Reference to Pharmaceutical Specialties and Biologicals (PDR). The second is by employing company representatives called "detail men" to instruct users of the drug.

PDR is an annual publication of all major drug

[2] Anaphylactic shock is a state of extreme hypersensitivity which may result from the intravenous injection of a drug. Stedman's Medical Dictionary (Unabridged Lawyers Edition, 1961).

[3] The package insert consisted of four printed pages containing information relating to the chemical contents of Renografin-60, its function as a contrast medium, recommended dosage, indications and contraindications, precautions and adverse reactions. In the paragraph labeled in bold faced capital letters PRECAUTIONS it was indicated that "the more serious anaphylactoid reaction requires immediate treatment". Reference was then made to an article authored by "Hildreth and associates" which recommended a specific type of therapy for such a reaction. The citation to this article was given in a footnote to this paragraph which appeared on the last page of the insert.

products and it contains information as to their use, warnings and instructions supplied by the manufacturers and descriptions of procedures used to minimize the dangers of adverse reactions. The PDR contained no information regarding the effects of Renografin-60 in its 1969 publication.

"Detail men" are manufacturer's agents who have regular contact with physicians. It was specifically alleged by the plaintiff that Squibb's detail man for St. Joseph Hospital, Harold Statts, had not thoroughly discussed with Dr. Scerhelmi the precautionary measures which ought to be taken when administering Renografin-60, nor was Statts aware that Dr. Scerhelmi, a non-radiologist, was administering the drug.

I.

*Whether the trial court erred in directing a verdict in defendant's favor on the issue of breach of an implied warranty.*

The plaintiff's case was presented under the traditional products liability theories of negligence and implied warranty. The theory of the plaintiff's warranty claim against Squibb was that Squibb failed to warn the medical profession effectively as to the dangers inherent in the use of the drug and as to precautions to be taken in its administration, that this failure constituted a defect in the drug, and that this defect was the proximate cause of the death. These latter two elements of proof—a defect attributable to the manufacturer and an injury resulting therefrom—are, of course, essential to a cause of action based on breach of an implied warranty. *Piercefield v Remington Arms Co, Inc,* 375 Mich 85, 96; 133 NW2d 129 (1965), *Cova v Harley Davidson Motor Co,* 26 Mich App 602, 612; 182 NW2d 800 (1970).

At the close of the plaintiff's proofs the trial judge directed a verdict for Squibb on the warranty claim on the ground that there was no evidence that Renografin-60 was unfit for the purposes it was intended to serve.[4] The court permitted the case to go to the jury on the negligence theory alone based on an alleged failure to give adequate warning to the medical profession.

This Court has held that a product, which is otherwise free from defect, can be defective because of the manufacturer's failure to warn of dangers associated with its use. *Gutowski v M & R Plastics & Coating, Inc,* 60 Mich App 499; 231 NW2d 456 (1975). Further it has long been recognized that implied warranty and negligence are separate and distinct theories of recovery and that under the implied warranty theory it is not necessary to prove negligence. *Manzoni v Detroit Coca-Cola Bottling Co,* 363 Mich 235; 109 NW2d 918 (1961).

Under both the implied warranty theory and the negligence theory, however, there must be (1) a standard by which the trier of fact determines whether or not the product is defective or the manufacturer negligent; and (2) proofs evidencing the fact that the condition of a particular product (implied warranty) or the conduct of a particular manufacturer (negligence) failed to meet the standard.

Our review of the record in this case leads us to the conclusion that the standard and the proofs under plaintiff's implied warranty theory are coextensive with and identical to the standard and proofs under plaintiff's negligence theory.

---

[4] The trial judge later denied that he ever directed a verdict for Squibb on this particular theory. However, the fact remains that the jury was precluded from considering the plaintiff's claim under a theory of breach of an implied warranty.

It is the duty of the ethical drug manufacturer[5] to warn the medical profession of any dangerous propensities of a drug which are known or should be known to the manufacturer.[6] The sufficiency of the warning is a matter of reasonableness and as such, it is generally a question for the trier of fact. *Nolan v Dillon,* 261 Md 516, 523; 276 A2d 36, 40 (1971), *Sterling Drug, Inc v Cornish,* 370 F2d 82, 84 (CA 8, 1967), *Love v Wolf,* 226 Cal App 2d 378, 395; 38 Cal Rptr 183, 192–193 (1964). "The standard by which a jury determines adequacy is the general negligence standard that liability is created by 'conduct which falls below the standard established by law for the protection of others against unreasonably great risks of harm'." *Gutowski v M & R Plastics & Coating, Inc, supra,* at pp 507–508, quoting from Prosser, Torts (4th ed), § 31, p 145. The type of evidence considered in determining whether the duty has been discharged will include the degree of risk posed by the drug's dangerous propensities and the difficulties inherent in bringing the warning home to the medical profession. *McEwen v Ortho Pharmaceutical Corp,* 270 Or 375, 390; 528 P2d 522, 530 (1974).

We recognize that normally the concept of warranty is not based on the failure to exercise reasonable care. But in this case the alleged defect in the product is really a failure to provide a warning "reasonable under the circumstances". *Sterling Drug, Inc v Yarrow,* 408 F2d 978, 993 (CA 8, 1969).

[5] We use the term ethical drug to mean a prescription drug as distinguished from a non-prescription drug sold over the counter.

[6] *McEwen v Ortho Pharmaceutical Corp,* 270 Or 375, 390; 528 P2d 522, 530 (1974), *Sterling Drug, Inc v Yarrow,* 408 F2d 978, 993 (CA 8, 1969), *Love v Wolf,* 226 Cal App 2d 378, 395; 38 Cal Rptr 183, 192–193 (1964). "Although the duty of the ethical drug manufacturer is to warn the doctor, rather than the patient, the manufacturer is directly liable to the patient for a breach of such duty." *McEwen v Ortho Pharmaceutical Corp, supra,* at pp 386–387 (footnote and citations omitted).

Hence, we are back to the tort concept of reasonable care.

Thus plaintiff's argument runs full circle. He correctly contends that under the implied warranty theory all that need be proven is a defect attributable to the manufacturer and an injury resulting from the defect. It is not necessary to prove negligence. In this case, however, there is no defect unless the defendant was negligent, that is unless the defendant failed to meet that standard of care which was reasonable under the circumstances in providing adequate warnings to users of the drug.

Stated in another way, it is obvious that a drug will be dangerous if used by someone who has no knowledge either of its propensities to cause unusual reactions or of the precautionary measures to be taken to avoid such reactions. However, even if Squibb had used every means of communication suggested by the plaintiff, it might still have happened that a particular technician failed to receive the necessary information. Therefore Renografin-60 was not a defective product because Dr. Scerhelmi did not receive the warnings. The drug was defective only if Squibb did not use reasonable means to communicate the warnings to those who, in the normal course of events, would use the drug. Reasonable means of communication are those means which reasonable prudence would require under the same or similar circumstances. See *Hill v Husky Briquetting, Inc,* 54 Mich App 17; 220 NW2d 137 (1974). Hence under the facts of this case the standard for determining whether the product was defective is the same as the standard for determining whether the drug company was negligent and the proofs required are identical.

We do not imply that there is not a valid distinction, in a products liability case, between the theory of implied warranty and the theory of negligence. Under the particular facts of this failure to warn case, however, it becomes a distinction without a difference since the standard and the proofs necessary to recover are identical under both theories. We find it far less confusing to discuss the duty to warn in terms of reasonableness right from the start rather than to become involved in the more cumbersome warranty concepts. As the California Court of Appeals said in *Love v Wolf*:

"No rule of *strict* liability (whether expressed in terms of breach of an implied warranty, or in terms of a breach of a duty of care in tort) has been applied to a failure adequately to warn of the dangers inherent in the use of a drug. * * * We have already held here there is a duty to exercise reasonable care to warn against the known dangers of a product. * * * There would appear, however, to be no sound basis to attempt to restate these rules in the terms of the law of contract warranties nor to extend them to impose a greater degree of care than that already stated." *Love v Wolf, supra,* at pp 402–403.

We find, therefore, that the trial court did not commit reversible error in submitting the case to the jury on the negligence theory alone.

## II.

*Whether remarks of defense counsel were so prejudicial that a new trial is required.*

The plaintiff argues strenuously that a fair trial was prevented because of the alleged misconduct

of Squibb's trial counsel. After the jury had been impaneled the trial judge and counsel engaged in a discussion—out of the presence of the jury—relating to the number of peremptory challenges to which each defendant was entitled under GCR 1963, 511.5. Counsel for plaintiff had previously accused all five defense counsel of exercising their peremptory challenges in an effort systematically to exclude blacks from the jury panel. As a result, an all white jury heard a case with black plaintiffs and white defendants. Squibb's counsel justified his peremptories on the ground that he had been attempting to secure the best educated jury possible and that he did so without regard to race. The comments made by defense counsel in connection with this issue have been read and considered by this court. They were not racist either in form or content and were not made in the jury's presence. We therefore fail to see any prejudice arising from these remarks.

Certain comments made by Squibb's counsel during closing argument are characterized by the plaintiff as "blatantly racist" and calculated to exploit the alleged racial prejudice of the jury. There were no objections to any of these comments at trial. (We note parenthetically that there has been no offer of proof as to racial prejudice on the part of any of the jurors.)

The plaintiff refers us to several cases which collectively stand for the principle that where the language of counsel "evinces a studied purpose to arouse the prejudice of the jury"[7] or an attempt to inject irrelevant issues (e.g., motive for bringing a

---

[7] *Cluett v Rosenthal,* 100 Mich 193, 199–200; 58 NW 1009 (1894) ("these men of Jerusalem", and imitating a Jewish dialect). *See also Solomon v Stewart,* 184 Mich 506, 511; 151 NW 716 (1915) (references to "Jew system" and "Jew deal").

lawsuit)[8] into the trial, the only appropriate remedy is to award a new trial.

Appellate review of allegedly improper, but unobjected to, argument is limited to a determination of whether the statements of counsel were "so extremely prejudicial that even a correction by the court would not undo the harm". *Taliaferro v Pere Marquette R Co,* 249 Mich 281, 287; 228 NW 778 (1930). We have thoughtfully considered the allegedly inflammatory statements in context and with due regard to the cases cited by defendant. The remarks complained of do not sink to the level of those condemned in the cases cited (see footnotes 7 and 8). We are not persuaded that a new trial is warranted in this case.

### III.

*Whether evidence of subsequent remedial measures was improperly excluded from evidence at trial.*

At trial the plaintiff attempted to introduce Renografin-60 package inserts adopted and used by Squibb subsequent to April 16, 1969, the date of the incident, and certain volumes of the Physician's Desk Reference for the years of 1970 and 1971. These materials contained a warning absent in earlier editions.

The trial judge properly refused admission. Evidence of subsequent remedial measures is generally not admissible when offered to prove negligence or culpable conduct on the part of a defendant. See *Judis v Borg-Warner Corp,* 339 Mich 313,

---

[8] *Kakligian v Henry Ford Hospital,* 48 Mich App 325, 329; 210 NW2d 463 (1973). (This lawsuit was started for "revenge".) *See also Morrison v Skeels,* 16 Mich App 727; 168 NW2d 644 (1969) (irrelevant issues), *Hatten v Bane,* 16 Mich App 10; 167 NW2d 466 (1969) (irrelevant issues in an attempt at personally involving the jury).

325; 63 NW2d 647 (1954), *Denolf v Frank L Jursik Co,* 54 Mich App 584; 221 NW2d 458 (1974), *lv grtd* 393 Mich 770 (1974), McCormick, Evidence (2d ed), § 275, pp 666–669, Federal Rules of Evidence, Rule 407.[9] None of the exceptions to this rule are pertinent here.[10]

Defendant argues, however, that even if the proposed exhibits were inadmissible to prove negligence, they should have been admitted under plaintiff's implied warranty count to prove the product was defective. We disagree. Inasmuch as the plaintiff's entire case was built around proof of an inadequate warning, a negligence concept, see *Gutowski v M & R Plastics & Coating, Inc, supra,* the theoretical distinction between negligence and implied warranty may not be exploited to obviate the policy reasons for the exclusionary rule.

## IV.

*Additional claims of error.*

Plaintiff makes two additional claims on appeal.

---

[9] This exclusionary rule rests on two grounds:

"(1) The conduct is not in fact an admission, since the conduct is equally consistent with injury by mere accident or through contributory negligence. Or, as Baron Bramwell put it, the rule rejects the notion that 'because the world gets wiser as it gets older, therefore it was foolish before'. (Citation omitted.)

"(2) The other, and more impressive ground for exclusion rests on a social policy of encouraging people to take, or at least not discouraging them from taking, steps in furtherance of added safety." Federal Rules of Evidence, Rule 407, Advisory Committee's Note.

[10] The rule does not require exclusion of evidence of subsequent remedial measures when offered to prove ownership or control of the injury producing instrumentality or feasibility of precautionary measures, if such issues are controverted, or for impeachment purposes. *Denolf v Frank L Jursik Co,* 54 Mich App 584, 591–594; 221 NW2d 458 (1974), McCormick, Evidence, *supra;* Federal Rules of Evidence, Rule 407. *Little v Borman Food Stores, Inc,* 33 Mich App 609; 190 NW2d 269 (1971), cited by defendant, is inapposite here since the proposed exhibits were not offered for impeachment purposes. *See also Narring v Sears, Roebuck & Co,* 59 Mich App 717, 727; 229 NW2d 901 (1975).

The first is that the trial court erred in failing to grant a new trial on the grounds that the verdict was against the great weight of the evidence.

The granting or denial of a new trial lies within the sound discretion of the trial judge. *Termaat v Bohn Aluminum & Brass Co,* 362 Mich 598, 602; 107 NW2d 783, 785 (1961). The test for granting appellate relief on weight of the evidence grounds is that the verdict is against the overwhelming weight of the evidence. *Lake Oakland Heights Park Association v Township of Waterford,* 6 Mich App 29; 148 NW2d 248 (1967). The record before us fails to meet that test. We decline to substitute our judgment for that of the jury.

The final claim relates to a pretrial order denying part of the plaintiff's discovery motion for production of certain documents in possession of the defendant. But in view of counsel's expressed satisfaction with this pretrial ruling and his failure to demonstrate how this ruling unfairly inhibited the preparation of his case we decline to review this issue.

The judgment of the circuit court is therefore affirmed. Costs to appellee.