**Paul I. LAWS and wife, Lassie L. Laws, Plaintiffs–Appellants,**

v.

**John C. JOHNSON, Jr., M.D., Johnson City Eye Clinic, Franklin State Corporation d/b/a the Johnson City Eye and Ear Pharmacy, Hospital Corporation of America d/b/a the Johnson City Eye and Ear Pharmacy, Suzanne Langdon, James E. Snyder, Joseph J. Wallen, Larry Calhoun, Altajane H. Caudill, and Merck and Company, Inc., Acting through its Merk, Sharp and Dohme Division, Defendants–Appellees.**

Court of Appeals of Tennessee, Eastern Section, at Knoxville.

July 17, 1990.

Application for Permission to Appeal Denied by Supreme Court Oct. 8, 1990.

Howard R. Dunbar, Dunbar & Dunbar, Johnson City, for plaintiffs/appellants.

J. Paul Coleman, H. Wayne Graves, Johnson City, for appellees The Johnson City Eye and Ear Pharmacy, Suzanne Langdon, James E. Snyder, Joseph J. Wallen and Altajane H. Caudill.

OPINION

SANDERS, Presiding Judge (E.S.).

Plaintiffs have appealed from a summary judgment in their suit against four pharmacists who, Plaintiffs alleged, were guilty of negligence in dispensing prescription drugs.

In 1979 Defendant Dr. John C. Johnson issued to Plaintiff–Appellant Paul I. Laws a prescription for a drug called Timoptic. The purpose of the drug was treatment of glaucoma from which Mr. Laws was suffering. Mr. Laws took the prescription to the Defendant, Johnson City Eye and Ear Pharmacy, and had it filled. Timoptic is manufactured by Defendant Merck and Company, Inc. It is a liquid eye drop medication in a small plastic bottle. The bottle is packaged in a small cardboard box along with a printed insert. The insert contains two full pages of extremely fine print detailing in technical and scientific terminology which, for the most part, could be interpreted and comprehended only by persons skilled in the medical pharmaceutical or chemical fields. It details the chemical make-up of Timoptic, the results of experimental usage, and such germane topics as overdosage, how supplied, description, clini-

cal pharmacology, contraindications, warnings, precautions, animal studies, carcinogenesis, mutagenesis, impairment of fertility, major surgery, drug interactions, pregnancy (pregnancy category C), nursing mothers, pediatric use, adverse reactions, body as a whole, headache, cardiovascular, nervous system, skin, respiratory, endocrine, etc. From 1979 until June, 1985, each time Mr. Laws had his prescription filled, the pharmacist who filled his prescription removed the printed insert from the package.

In July, 1984, Mr. Laws had a heart attack. Between July and November he had three attacks and was then terminated from his employment because of his disability.

In June or July, 1985, Mr. Laws purchased some Timoptic from which the printed inserts had not been removed. Apparently, after reading the insert in the Timoptic package Mr. Laws went to the Johnson City Eye and Ear Pharmacy and inquired as to why the package inserts were not in the boxes containing the Timoptic he had purchased previously. He was told, in effect, the inserts were always removed. He then talked to Dr. Johnson about the matter to inquire if taking Timoptic could have been a contributing factor in his heart attacks. Dr. Johnson informed him something to the effect, "It is very rare that Timoptic causes heart problems," and advised him to continue using it. Mr. Laws last visited Dr. Johnson in April or May, 1986, at which time Dr. Johnson advised him to continue using Timoptic.

In July, 1986, Mr. Laws and his wife filed suit against the Defendants. They alleged Dr. Johnson and Johnson City Eye Clinic, P.C., were guilty of medical malpractice. They alleged Franklin State Corporation d/b/a The Johnson City Eye and Ear Pharmacy, Hospital Corporation of America d/b/a Johnson City Eye and Ear Pharmacy, and Defendants–Appellees, pharmacists Suzanne Langdon, James E. Snyder, Joseph J. Wallen, Larry Calhoun, and Altajane H. Caudill, were guilty of negligence. The complaint, as pertinent here, alleged: "Plaintiffs contend that Defendants, Su-

zanne Langdon, James E. Snyder, Joseph J. Wallen, Larry Calhoun and Altajane H. Caudill were negligent in that each Defendant dispensed Timoptic to Mr. Laws at one time or another during the almost seven years he has been buying Timoptic, that these Defendants had a common law duty to Mr. Laws to use ordinary care in dispensing Timoptic in accordance with Dr. Johnson's prescription and these Defendants breached that duty by taking the manufacturer's package insert, Exhibit A, out of the box before selling the Timoptic to Mr. Laws. Plaintiffs contend that the negligence of these Defendants was the proximate cause of Mr. Laws heart problems.

"Plaintiffs allege Defendants ... were negligent in that they owed a legal duty to Mr. Laws to dispense prescriptions in accordance with T.C.A. § 63–10–207(1) which requires that all prescriptions be filled in 'strict conformity with any directions of the prescribing physician ... as are contained in the prescription.' Plaintiffs contend that taking the manufacturer's package insert out of the cardboard box prior to sale was not filling the prescription in conformity with the prescription because Dr. Johnson's prescription did not say to take the manufacturer's package insert out of the box." The complaint against Defendant Merck and Company, Inc., alleged Timoptic was defective and unreasonably dangerous.

Subsequently the suit was dismissed or nonsuit was taken as to all Defendants except Johnson City Eye and Ear Pharmacy, Suzanne Langdon, James E. Snyder, Joseph J. Wallen, Larry Calhoun, and Altajane H. Caudill. They all filed a motion for summary judgment which was sustained by the trial court and the Laws have appealed, saying the court was in error. We cannot agree for the reasons hereinafter stated.

This case, having been disposed of on summary judgment Rule 56, T.R.C.P., we must look to the pertinent provisions of that rule as they relate to the case at bar. Rule 56.03, as pertinent here, provides: "The judgment sought shall be rendered forthwith if the pleadings, depositions, an-

swers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." In *Moman v. Walden,* 719 S.W.2d 531 (Tenn.App.1986) this court, in addressing what a plaintiff must do to withstand summary judgment under the rule, said:

> Under Rule 56.03, upon motion, summary judgment shall be entered against a party who failed to make a showing sufficient to establish the existence of an essential element to that party's case and on which the party will bear the burden of proof at trial. If the non-moving party fails to establish the existence of an essential element, there can be no genuine issue as to any material fact since a complete failure of proof concerning an essential element of the non-moving party's case necessarily renders all other facts immaterial. *Celotex Corp. v. Catrett,* 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

719 S.W.2d at 533. *Also see Stanley v. Joslin,* 757 S.W.2d 328, 330 (Tenn.App. 1987). The Plaintiffs have totally failed to meet this criterion.

The Defendants filed a motion for summary judgment, insisting there was no genuine issue of material fact and Defendants were free of any professional negligence. In support of the motion they filed the affidavits of four of the pharmacists, Susan Langdon, James E. Snyder, Joseph J. Wallen, and Altajane Caudill. They also relied upon the affidavits of Dr. Johnson and Dr. Stanley Vermillion. As pertinent here, the affidavit of Mr. Wallen states: "Package inserts are designed for the purpose of the manufacturers' conveying to the prescribing physician the benefits and risks, etc., of the use of the drug. Package inserts, therefore, are commonly removed by the filling pharmacist simply because the inserts, as above stated, are designed for the use of the prescribing physician, and not the patient. The inserts contain a mass of technical information, including the basic molecules, chemical composition of the drug and other highly technical information that a lay person is incapable of understanding, and this often results in complete confusion on the part of the patient and may result in the patient discontinuing the medication as prescribed by the physician...." The affidavits of the other pharmacists were to the same effect. The affidavits also stated the pharmacists all adhered to the acceptable standards of pharmaceutical care in dispensing the Timoptic to Mr. Laws as the physician ordered and without deviation or departure from such standard.

The affidavit of Dr. Johnson established that during his treatment of Mr. Laws from October, 1978, through June, 1986, he continuously prescribed Timoptic for the control of his severe chronic open angle glaucoma. Also, during that time he was familiar with and aware of the information contained in the package inserts removed by the pharmacists. It was undisputed that without the treatment of Mr. Laws by Dr. Johnson with Timoptic Mr. Laws would have lost his vision in both eyes. Dr. Johnson was familiar with all the side effects described in the literature inserts in the packages but it was a judgment call by Dr. Johnson to use Timoptic to save Mr. Laws's eyesight. The only other alternative was surgery, with its attendant risk of causing loss of sight.

In considering the issue at bar it is necessary to recognize there is one body of the law relating to "proprietary or patent medicine" and the other relating to "ethical drugs" dispensed only by prescription. In dispensing "proprietary or patent" medicine all warnings relating to the use of the drug must be given to the consumer of the drug. In dispensing "ethical or prescription" drugs all warnings relating to the use of the drug must be given to the doctor or physician prescribing the drug. T.C.A. § 63–10–201(d)(1) provides:

> "Proprietary or patent medicine" means a medicine in its unbroken, original package which is advertised, promoted, offered for sale or sold by or under the authority of the manufacturer, or primary distributor thereof, directly to the general public under a trademark, trade name or other trade symbol pri-

vately owned, whether or not registered in the United States patent office, and labeling of which bears:

(A) A statement specifying affections, symptoms or purposes for which the product is recommended;

(B) Adequate directions for use and such warnings as are necessary for the protection of users;

(C) An accurate statement of the quantity of the contents in terms of weight, measure or numerical count;

(D) A statement of the active ingredients; and

(E) the name and address of the manufacturer or primary distributor thereof.

Provided, however, that the term "proprietary or patent medicine" shall not apply to any medicine which may be dispensed only upon prescription, or is designated under any law of this state as a narcotic, hypnotic, habit forming, dangerous or poisonous drug or medicine, nor to any therapeutic vitamin.

Restatement (Second) of Torts § 402(A) (1965) applies to the doctrine of strict liability with reference to products sold in commerce. It has been rather universally adopted in both state and federal jurisdiction. Comment k to § 402(A), which governs the case at bar, states:

k. *Unavoidably unsafe products.* There are some products which, in the present state of human knowledge, are quite incapable of being made safe for their intended and ordinary use. These are especially common in the field of drugs. An outstanding example is the vaccine for the Pasteur treatment of rabies, which not uncommonly leads to very serious and damaging consequences when it is injected. Since the disease itself invariably leads to a dreadful death, both the marketing and the use of the vaccine are fully justified, notwithstanding the unavoidable high degree of risk which they involve. Such a product, properly prepared, and accompanied by proper directions and warning, is not defective, nor is it *unreasonably* dangerous. The same is true of many other drugs, vaccines, and the like, many of which for this very reason cannot legally be sold except to physicians, or under the prescription of a physician. It is also true in particular of many new or experimental drugs as to which, because of lack of time and opportunity for sufficient medical experience, there can be no assurance of safety, or perhaps even of purity of ingredients, but such experience as there is justifies the marketing and use of the drug notwithstanding a medically recognizable risk. The seller of such products, again with the qualification that they are properly prepared and marketed, and proper warning is given, where the situation calls for it, is not to be held to strict liability for unfortunate consequences attending their use, merely because he has undertaken to supply the public with an apparently useful and desirable product, attended with a known but apparently reasonable risk.

The Supreme Court of Washington, in *Terhune v. A.H. Robins Co.*, 90 Wash.2d 9, 577 P.2d 975 (1978), in commenting on Section k, said:

It will be seen that this comment speaks of "drugs, vaccines, and the like", including experimental drugs, which cannot legally be sold except to a physician. The comment does not purport to state what is "proper warning" where such a product is involved. However, it has become a well-established rule that in such cases, the duty of the manufacturer to warn of dangers involved in use of a product is satisfied if he gives adequate warning to the physician who prescribes it. *Smith v. E.R. Squibb & Sons, Inc.*, 69 Mich.App. 375, 245 N.W.2d 52 (1976); *Reyes v. Wyeth Laboratories*, 498 F.2d 1264 (5th Cir.1974); *McEwen v. Ortho Pharmaceutical Corp.*, 270 Or. 375, 528 P.2d 522 (1974); *Hines v. St. Joseph's Hosp.* 86 N.M. 763, 527 P.2d 1075 (1974); *Leibowitz v. Ortho Pharmaceutical Corp.*, 224 Pa.Super. 418, 307 A.2d 449 (1973); *Mulder v. Parke Davis & Co.*, 288 Minn. 332, 181 N.W.2d 882 (1970); *Basko v. Sterling Drug, Inc.*, 416 F.2d 417 (2d Cir.1969); *Johnston v. Upjohn Co.*, 442 S.W.2d 93 (Mo.App.1969); *Davis v. Wyeth Laboratories, Inc.*, 399 F.2d

121 (9th Cir.1968); *Stottlemire v. Cawood,* 213 F.Supp. 897 (D.C.D.C.1963); *Parker v. State,* 201 Misc. 416, 105 N.Y. S.2d 735 (1951); *Hamilton v. Hardy* [37 Colo.App. 375], 549 P.2d 1099 (Colo.App. 1976).

The reasons for this rule should be obvious. Where a product is available only on prescription or through the services of a physician, the physician acts as a "learned intermediary" between the manufacturer or seller and the patient. *Id.* 577 P.2d at 977.

In the case of *Reyes v. Wyeth Laboratories,* 498 F.2d 1264 (5th Cir.1974), in commenting on the rule, the court said:

We cannot quarrel with the general proposition that where *prescription* drugs are concerned, the manufacturer's duty to warn is limited to an obligation to advise the prescribing physician of any potential dangers that may result from the drug's use. This special standard for prescription drugs is an understandable exception to the Restatement's general rule that one who markets goods must warn foreseeable ultimate users of dangers inherent in his products: See Restatement (Second) of Torts, Section 388 (1965). Prescription drugs are likely to be complex medicines, esoteric in formula and varied in effect. As a medical expert, the prescribing physician can take into account the propensities of the drug, as well as the susceptibilities of his patient. His is the task of weighing the benefits of any medication against its potential dangers. The choice he makes is an informed one, an individualized medical judgment bottomed on a knowledge of both patient and palliative. Pharmaceutical companies then, who must warn ultimate purchasers of dangers inherent in patent drugs sold over the counter, in selling prescription drugs are required to warn only the prescribing physician, who acts as a "learned intermediary" between manufacturer and consumer.

*Id.* at 1276. *Also see Stone v. Smith Kline & French Laboratories,* 731 F.2d 1575 (11th Cir.1984) and *Lindsay v. Ortho Phar-*

*maceutical Corp.,* 637 F.2d 87 (2d Cir. 1980).

The Appellants, both in their complaint and in their brief, cite the following excerpts from the insert which Mr. Laws removed from the package in which the Timoptic was contained:

## "CONTRAINDICATIONS

"TIMOPTIC is contraindicated in patients with ... sinus bradycardia; second and third degree antrioventricular block; overt cardiac failure ... cardiogenic shock....

## "WARNINGS

"The same adverse reaction found with systemic administration of beta-adrenergic blocking agents may occur with topical administration. For example, severe ... cardiac reactions ... and rarely death in association with cardiac failure have been reported following administration of Timoptic.

## "ADVERSE REACTIONS

"CARDIOVASCULAR—Bradycardia, arrhythmia ... congestive heart failure, palpitation, cardiac arrest....

"The following additional adverse effects have been reported in clinical experience with oral timolol maleate, and may be considered potential effects of ophthaimic timolol maleate: Cardiovascular: ... cardiac failure ... worsening of angina pectoris, worsening of arterial insufficiency...."

They argue they were personally entitled to this information and the removal of the insert wrongfully deprived them of this information.

We cannot agree. In the case of *Brooks v. Medtronic, Inc.,* 750 F.2d 1227 (4th Cir. 1984), Brooks sued Medtronic, Inc., claiming the pacemaker implanted in Brooks and manufactured by Medtronic, Inc., was defective and Medtronic failed to warn him of the risk involved. Upon the trial of the case the trial court instructed the jury, "The manufacturer had a duty to warn *physicians* of any dangerous characteris-

tics that were not well known to the medical community." Brooks's counsel objected, saying the jury should have been instructed that Medtronic also had a duty to warn the consumer directly of known risks associated with implant surgery. In addressing this issue on appeal, the court said:

We are similarly not persuaded by Brooks' argument that the drug exception should not apply because Medtronic had advance notice of his surgery and therefore had ample opportunity to provide him with a warning. That argument mischaracterizes the purpose of the exception. Although a subsidiary rationale for limiting the manufacturer's duty to warn is based on a concern about the practical problems of providing notice to each consumer, the rule is bottomed on the view that physicians are in a better position to assess risks and determine when a particular patient reasonably should be informed about a risk.

Appellant complains that an affirmance would abrogate the patient's right to know. That prediction overstates the case. The issue raised by the appeal is not whether information should be disclosed at all; instead, the question turns on who is in a better position to disclose risks. It is the physician's duty to remain abreast of product characteristics and, exercising an informed professional judgment, decide which facts should be told to the patient. Once adequate warnings are given to the physician, the choice of treatment and the duty to disclose properly fall on the doctor. Indeed, we have little trouble imagining—particularly with cardiac patients—situations where total disclosure by a manufacturer would not be in the patient's best interest. One in a serious medical condition of the sort experienced by Brooks as a general matter faces unwanted, unsettling and potentially harmful risks if advice, almost inevitably involved and long-winded, from non-physicians, contrary to what the doctor of his choice has decided should be done, must be supplied to him during the already stressful period shortly before his trip to the operating room.

We therefore hold that the district court's duty to warn instruction was proper.

Appellants also argue the pharmacists failed to conform with the requirements of T.C.A. § 63–10–207(1) in filling the prescription of Dr. Johnson. The statute, as pertinent here, provides:

**Compliance with terms of prescriptions.**—No registered pharmacist or intern authorized by the provisions of this chapter to fill physicians', dentists' or veterinarians' prescriptions shall fill any such prescription except upon the following conditions:

(1) All prescriptions shall be filled in strict conformity with any directions of the prescribing physician, dentist, or veterinarian as are contained in the prescriptions.

Appellants, in support of their argument the pharmacists failed to conform to the statute, argue in their brief as follows: "Plaintiffs contend that Timoptic not only means the drug itself, but the entirety of the Merck product sold in a sealed package including the bottle holding the Timoptic fluid and also the box the bottle comes in and also the package insert that comes inside the sealed box. Stated another way, when the package insert is removed from the Merck product, the result is not Timoptic any longer because Timoptic means everything in the product sold by Merck in a sealed package including the box, package inserts, bottle as well as the fluid. To state Plaintiff's position still another way, a prescription for Timoptic means the sealed box and *everything* inside the sealed box sold by Merck under their trade name Timoptic."

Appellants cite us to no authority to support their argument, nor have we found any. A copy of Dr. Johnson's prescription is not in the record but there is nothing in the record which would indicate there was anything "contained in the prescription" other than the drug "Timoptic" itself. T.C.A. § 63–10–201 provides, as pertinent here: "**Pharmacist required for sale of medicines—Penalties.**—(a) For the purpose of this section unless the context oth-

erwise requires: ... (3) 'Fill' means to supply and place in an appropriate container the things needed or called for in a prescription...."

The pharmacists, in their affidavits, say they dispensed the Timoptic in accordance with Dr. Johnson's order and there is nothing in the record to refute this. As a matter of fact, the Laws have filed nothing in contravention of the affidavits of the pharmacists.

The Appellants, in their brief, insist there are three issues of material fact which make summary judgment inappropriate in this case. First, they say there is an issue as to whether or not the pharmacists dispensed the Timoptic in compliance with the statute. For the reasons heretofore given, we cannot agree. Second, they say there is a question of fact as to whether or not the pharmacists removed the insert from the package. While the record does not contain a forthright admission by the pharmacists they removed the inserts from the packages, they have not denied it. The affidavit of Mr. Wallen states: "Further, with regard to the allegations that the package inserts were removed from the Timoptic furnished Mr. Laws, this was probably done by the various pharmacists at the Johnson City Eye and Ear Hospital Pharmacy, myself included." Based on this statement and the record as a whole, we can conclude the pharmacists did, in fact, remove the inserts. Third, the Laws say the affidavits of Dr. Vermillion and Dr. Burman create a factual issue as to causation. With this we agree. It is not a material issue, however, as far as the pharmacists are concerned. Their only function was to fill the prescription of Dr. Johnson.

The issues are found in favor of the Appellees. The judgment of the trial court is affirmed. The case is remanded to the trial court and the cost is taxed to the Appellants.

GODDARD and ANDERSON, JJ., concur.