Donald Wade PITTMAN, Sr. and Reba Pittman as guardians of the person and estate of Donald Wade Pittman, Jr., a disabled and incompetent person, Plaintiffs–Appellants,

v.

The UPJOHN COMPANY, Ralph W. Simonton, Jr., M.D. and Portland Prescription Shop, Defendants–Appellees.

Supreme Court of Tennessee,
at Nashville.

Nov. 28, 1994.

Charles Hill Beaty, Bruce N. Oldham, Gallatin, for plaintiffs-appellants.

J. Randolph Bibb, Jr., Katherine A. Brown, Nashville, for defendant-appellee The Upjohn Co.

Thomas W. Lawrence, Jr., M. Bradley Gilmore, Nashville, John R. Bradley, Hendersonville, for defendant-appellee Ralph W. Simonton, Jr., M.D.

Mark T. Smith, Gallatin, for defendant-appellee Portland Prescription Shop.

## OPINION

REID, Justice.

This case presents for review the judgment of the Court of Appeals granting summary judgments for the defendants—the

manufacturer that made an unavoidably dangerous prescription drug, the physician who prescribed the drug, and the pharmacy that dispensed the drug—on the ground that the defendants owed no duty to the plaintiff, for whom the drug was not prescribed. The record supports summary judgment for all defendants.

The plaintiffs, as guardians of the person and estate of Donald Wade Pittman, Jr., brought this action against The Upjohn Company, Ralph W. Simonton, Jr., M.D. and Portland Prescription Shop, seeking damages for injuries sustained by Pittman as the result of the ingestion of Micronase, a drug that had been prescribed for his grandmother. The complaint alleges that each of the defendants had a duty to warn of the dangerous properties of Micronase and the potentially deadly consequences of its being consumed by someone other than the person for whom it was prescribed. Each defendant filed a motion for summary judgment asserting that no duty was owed to Pittman as a matter of law. The trial court granted The Upjohn Company and the Portland Prescription Shop summary judgments. Dr. Simonton's motion was overruled. The Court of Appeals granted summary judgment to all defendants. It unanimously affirmed the summary judgment in favor of The Upjohn Company; a majority of the court affirmed the summary judgment in favor of the Portland Prescription Shop; and a majority reversed the trial court and entered summary judgment in favor of Dr. Simonton.

For purposes of these motions, the facts are undisputed. On March 15, 1988, Pittman's grandmother, Bessie Richards, was diagnosed as having adult-onset diabetes mellitus by Dr. Simonton, her family physician. Dr. Simonton prescribed Micronase, a prescription drug manufactured by The Upjohn Company. Portland Prescription Shop filled the prescription with five milligram Micronase tablets which were blue in color and imprinted with "Micronase" and the number "5." The only instruction on the label was to take one Micronase tablet before breakfast, and the only warning on the bottle was to keep all medicine out of the reach of children. No other information regarding the drug appeared on or in the bottle, and no other information about the drug was given by the physician or the pharmacist to Richards. At her request, the tablets were dispensed in a bottle without a childproof safety cap. Richards kept the bottle on top of her refrigerator alongside a bottle of aspirin and other medicine.

Micronase is capable of causing severe hypoglycemia, a condition resulting from abnormally low blood sugar. If not properly treated, severe hypoglycemia may cause coma, seizures and other neurological impairments. Micronase package inserts furnished by The Upjohn Company to the physician and the pharmacist explicitly warn of the possibility of hypoglycemia and stress the importance of giving proper instructions regarding the use of the drug and the symptoms of complications.

On November 2, 1988, Pittman, then 26 years old, was visiting his grandmother. Pittman told Richards that he was hurting all over and thought he had the flu. She told him there was aspirin on top of the refrigerator if he needed it and apparently said nothing about the Micronase.

Without the knowledge or consent of his grandmother, Pittman took the Micronase tablets, apparently believing that they were aspirin. Within a few hours, Pittman experienced a severe reaction to the drug, and his condition deteriorated over the next two days. He slept most of the time and ate very little food. On November 4, 1988, the family became concerned because Pittman could not be awakened. Richards then discovered that six of her Micronase tablets were missing. Pittman was taken immediately to the hospital, where he was diagnosed as suffering from severe hypoglycemia. He sustained permanent brain damage and is hospitalized in an extended care facility.

## I

### *Summary Judgment*

The procedural issue as to each defendant is whether the summary judgment should be affirmed or reversed. In *Byrd v. Hall,* 847 S.W.2d 208, 214 (Tenn.1993), the Court discussed the proper use of the sum-

mary judgment process under Rule 56 of the Tennessee Rules of Civil Procedure:

> Rule 56 comes into play only when there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law. Thus, the issues that lie at the heart of evaluating a summary judgment motion are: (1) whether a *factual* dispute exists; (2) whether the disputed fact is *material* to the outcome of the case; and (3) whether the disputed fact creates a *genuine* issue for trial.

In determining whether the disputed, material fact creates a genuine issue, the court is to view the evidence in the light most favorable to the nonmoving party and allow all reasonable inferences in its favor. *Id.* at 215. The party seeking summary judgment has the burden of demonstrating that there are no disputed, material facts creating a genuine issue for trial. *Id.*

An essential of Pittman's case against each defendant is the allegation of facts that would support a finding of a duty of care owed Pittman. As in all cases, there is a duty to exercise reasonable care under the circumstances. *See Doe v. Linder Construction Co.*, 845 S.W.2d 173, 177 (Tenn.1992). In *Doe*, the Court explained:

> The term reasonable care must be given meaning in relation to the circumstances. Ordinary, or reasonable, care is to be estimated by the risk entailed through probable dangers attending the particular situation and is to be commensurate with the risk of injury. The risk involved is that which is foreseeable; a risk is foreseeable if a reasonable person could foresee the probability of its occurrence or if the person was on notice that the likelihood of danger to the party to whom is owed a duty is probable. Foreseeability is the test of negligence. If the injury which occurred could not have been reasonably foreseen, the duty of care does not arise, and even though the act of the defendant in fact caused the injury, there is no negligence and no liability. "[T]he plaintiff must show that the injury was a reasonably foreseeable probability, not just a remote possibility, and that some action within the [defendant's] power more prob-

ably than not would have prevented the injury."

*Id.* at 178 (citations omitted). *See also McClenahan v. Cooley*, 806 S.W.2d 767 (Tenn.1991); *Dooley v. Everett*, 805 S.W.2d 380 (Tenn.Ct.App.1990).

> The existence or nonexistence of a duty owed to the plaintiff by the defendant is entirely a question of law for the court. Prosser, section 37 at 236.

*Bradshaw v. Daniel*, 854 S.W.2d at 869. A statement of the underlying principle regarding the duty of care is found in *Lindsey v. Miami Development Corp.*, 689 S.W.2d 856, 858–59 (Tenn.1985) (quoting W. Page Keeton, et al., *Prosser and Keeton on the Law of Torts*, § 37, at 236 (5th ed. 1984)):

> [U]pon the facts in evidence, such a relation exists between the parties that the community will impose a legal obligation upon one for the benefit of others—or, more simply, [where] the interest of the plaintiff which has suffered invasion was entitled to legal protection at the hands of the defendant. This is entirely a question of law, to be determined by reference to the body of statutes, rules, principles and precedents which make up the law; and it must be determined only by the court. . . .

In this case, the duty alleged by Pittman and denied by each defendant is the duty to give an adequate warning regarding the properties and dangers of Micronase.

## II

### *The Upjohn Company—The Manufacturer*

 Drug manufacturers have a duty to exercise ordinary and reasonable care not to expose the public to an unreasonable risk of harm from the use of their products. *See O'Hare v. Merck & Company*, 381 F.2d 286, 291 (8th Cir.1967). Manufacturers of prescription drugs, like the manufacturers of any other unavoidably dangerous product, have a duty to market and distribute their products in a way that minimizes the risk or danger. They may discharge their duty by distributing the drugs with proper directions and adequate warnings to those who foreseeably could be injured by the use of their products. *See* Restatement (Second) of

Torts, § 402A comment k (1965); *Stanback v. Parke, Davis & Co.*, 657 F.2d 642, 644 (4th Cir.1981); *Buckner v. Allergan Pharmaceuticals*, 400 So.2d 820, 822 (Fla.Dist.Ct.App. 1981); *Wooderson v. Ortho Pharmaceutical Corp.*, 235 Kan. 387, 681 P.2d 1038, 1050 *cert. denied*, 469 U.S. 965, 105 S.Ct. 365, 83 L.Ed.2d 301 (1984).

■ The means whereby the product is dispersed is significant in determining to whom appropriate warnings should be given. As noted by the Court of Appeals in *Laws v. Johnson*, 799 S.W.2d 249 (Tenn.App.1990):

> In considering the issue at bar it is necessary to recognize there is one body of the law relating to "proprietary or patent medicine" and the other relating to "ethical drugs" dispensed only by prescription. In dispensing "proprietary or patent" medicine all warnings relating to the use of the drug must be given to the consumer of the drug. In dispensing "ethical or prescription" drugs all warnings relating to the use of the drug must be given to the doctor or physician prescribing the drug.

*Id.* at 251.

■ Under the "learned intermediary doctrine," makers of unavoidably unsafe products who have a duty to give warnings may reasonably rely on intermediaries to transmit their warnings and instructions. *See* Restatement (Second) of Torts, § 388 comment n, (1965); *Whitehead v. Dycho Co.*, 775 S.W.2d 593, 598 (Tenn.1989); Brushwood & Simonsmeier, *Drug Information for Patients*, 7 J.Legal Med. 279, 284 (1986). Physicians are such intermediaries because of the pivotal role they play in the unique system used to distribute prescription drugs. W. Page Keeton, et al., *Prosser and Keeton on the Law of Torts*, § 98, at 688 (5th ed. 1984). Accordingly, a majority of jurisdictions now recognize that the manufacturer of an unavoidably unsafe prescription drug can discharge its duty to warn by providing the physician with adequate warnings of the risks associated with the use of its drug. *Stone v. Smith, Kline & French Laboratories*, 731 F.2d 1575, 1579–80 (11th Cir.1984); *Reyes v. Wyeth Laboratories*, 498 F.2d 1264, 1276 (5th Cir.), *cert. denied*, 419 U.S. 1096, 95 S.Ct. 687, 42 L.Ed.2d 688 (1974); 3 L. Frum-

er & M. Friedman, *Products Liability* § 50.03[1][c], at 50–229 (1992); Brushwood & Simonsmeier, *Drug Information for Patients*, 7 J.Legal Med. 279, 284–88 (1986). However, physicians can be learned intermediaries only when they have received adequate warnings. *Amore v. G.D. Searle & Co.*, 748 F.Supp. 845, 850 (S.D.Fla.1990). Thus, the learned intermediary doctrine does not shield a drug manufacturer from liability for inadequate warnings to the physician. *Tracy v. Merrell Dow Pharmaceuticals, Inc.*, 58 Ohio St.3d 147, 569 N.E.2d 875, 878 (1991).

■ Warnings concerning prescription drugs generally are adequate when they contain a full and complete disclosure of the potential adverse reactions to the drug. A reasonable warning not only conveys a fair indication of the dangers involved, but also warns with the degree of intensity required by the nature of the risk. *Seley v. G.D. Searle & Co.*, 67 Ohio St.2d 192, 423 N.E.2d 831, 837 (1981). Among the criteria for determining the adequacy of a warning are:

> 1. the warning must adequately indicate the scope of the danger; 2. the warning must reasonably communicate the extent or seriousness of the harm that could result from misuse of the drug; 3. the physical aspects of the warning must be adequate to alert a reasonably prudent person to the danger; 4. a simple directive warning may be inadequate when it fails to indicate the consequences that might result from failure to follow it and, . . . 5. the means to convey the warning must be adequate.

*Serna v. Roche Laboratories*, 101 N.M. 522, 684 P.2d 1187, 1189 (N.M.App.1984).

■ The adequacy of a drug manufacturer's warnings is normally a question of fact. *Abbot v. American Cyanamid Co.*, 844 F.2d 1108, 1115 (4th Cir.), *cert. denied*, 488 U.S. 908, 109 S.Ct. 260, 102 L.Ed.2d 248 (1988); *Mahr v. G.D. Searle & Co.*, 72 Ill.App.3d 540, 28 Ill.Dec. 624, 640, 390 N.E.2d 1214, 1230 (1979); *Reeder v. Hammond*, 125 Mich.App. 223, 336 N.W.2d 3, 5 (1983). It becomes a question of law only when the instructions are accurate and unambiguous. *Miles Labo-*

*ratories, Inc. v. Superior Court of Orange County,* 133 Cal.App.3d 587, 184 Cal.Rptr. 98, 104 (1982); *Felix v. Hoffman–LaRoche, Inc.,* 540 So.2d 102, 105 (Fla.1989).

Pittman challenges the adequacy of The Upjohn Company's warnings concerning Micronase in two particulars. First, he asserts that The Upjohn Company did not adequately direct physicians to warn their patients of the adverse effects of Micronase and of the precautions to be taken if these effects manifest themselves. Second, he asserts that The Upjohn Company's warnings should have advised physicians to warn their patients not to share their Micronase with others. Both of these issues can be disposed of as a matter of law.

The Upjohn Company's materials concerning Micronase contain the following precautions:

**Hypoglycemia:** All sulfonylureas are capable of producing severe hypoglycemia. Proper patient selection and dosage and instructions are important to avoid hypoglycemic episodes.

. . . . .

**Information for Patients:** Patients should be informed of the potential risks and advantages of Micronase and of alternative modes of therapy. They also should be informed about the importance of adherence to dietary instructions, of a regular exercise program, and of regular testing of urine and/or blood glucose.

The risks of hypoglycemia, its symptoms and treatment, and conditions that predispose to its development should be explained to patients and responsible family members. Primary and secondary failure should also be explained.

In the section dealing with overdoses, The Upjohn Company's materials state:

Overdosage of sulfonylureas, including Micronase Tablets, can produce hypoglycemia. Mild hypoglycemic symptoms, without loss of consciousness or neurological findings, should be treated aggressively with oral glucose and adjustments in drug dosage and/or meal patterns. Case monitoring should continue until the physician is assured that the patient is out of danger.

Severe hypoglycemic reactions with coma, seizure, or other neurological impairment occur infrequently, but constitute medical emergencies requiring immediate hospitalization. . . .

The adequacy or need for a warning should be evaluated in light of the expertise of the users of the product. *Mozeke v. International Paper Co.,* 933 F.2d 1293, 1297 (5th Cir.1991); *Guevara v. Dorsey Laboratories,* 845 F.2d 364, 367 (1st Cir. 1988). Where a product is marketed solely to professionals experienced in using the product, the manufacturer may rely on the knowledge that a reasonable professional would apply in using the product. *Pavlides v. Galveston Yacht Basin, Inc.,* 727 F.2d 330, 338 (5th Cir.1984); *Tracy v. Merrell Dow Pharmaceuticals, Inc.,* 58 Ohio St.3d 147, 569 N.E.2d 875, 878–79 (1991).

Physicians are, under this analysis, users of prescription drugs. The Upjohn Company, therefore, could rely on their professional expertise and good judgment in preparing its warnings and precautions concerning Micronase. Since it fully and fairly disclosed the drug's potential for harmful side effects and appropriate precautions, The Upjohn Company had the right to assume that the prescribing physicians would provide adequate warnings and instructions. These instructions plainly inform physicians that Micronase can cause mild and severe hypoglycemia. They clearly advise physicians to explain the symptoms of hypoglycemia to their patients and responsible *family members,* and to give instructions regarding the precautions to be taken should those symptoms become manifest.

Upjohn's warning to the physician and the pharmacist was sufficient to meet both assertions of inadequacy made by the plaintiff. In the face of the extensive information given by Upjohn to the physician and pharmacist, the plaintiff's claim that the warning regarding the adverse effect of Micronase and the precautions to be taken was inadequate obviously is without merit. The plaintiff's second assertion, that Upjohn should have advised physicians to warn their patients not to share Micronase with others, is also without merit

on this record. The literature given the physician and the pharmacist contained an admonition more complete than the advice that the patient should not share her Micronase with others. The Upjohn literature stated that the "risk of hypoglycemia, its symptoms and treatment, and conditions that predisposed to its development should be explained to patients and responsible family members." Had this advice been followed by the physician or the pharmacist, Richards and her "responsible family members" would have known of the dangers of Micronase. The Upjohn Company's warnings and instructions to prescribing physicians were sufficient to discharge its duty to those persons to whom it owed a duty to warn.

There is no genuine issue of disputed, material fact with regard to The Upjohn Company's duty to warn in this case. Its warning was sufficient as a matter of law; consequently, it is entitled to summary judgment in its favor.

### III

### *Dr. Simonton—The Prescribing Physician*

 The premise on which the learned intermediary doctrine is based failed in this case. The justification for relieving manufacturers of prescription drugs of the duty imposed generally upon manufacturers is that:

> Prescription drugs are likely to be complex medicines, esoteric in formula and varied in effect. As a medical expert, the prescribing physician can take into account the propensities of the drug, as well as the susceptibilities of his patient. His is the task of weighing the benefits of any medication against *its potential dangers*. The choice he makes is an informed one, an individualized medical judgment bottomed on a knowledge of both patient and palliative.

*Stone v. Smith, Kline & French Laboratories,* 731 F.2d at 1579–1589 (quoting *Reyes v. Wyeth Laboratories,* 498 F.2d at 1276) (emphasis added). In this case, Dr. Simonton gave no warning; consequently, neither his patient nor any member of his patient's family got the benefit of his knowledge and judgment regarding the dangers of Micronase.

Dr. Simonton acknowledges that had his patient, Pittman's grandmother, experienced a complication as the result of dangers of which she was not advised, the physician's liability would be clear beyond dispute. He insists, however, that he owed no legal duty to any person other than his patient.

 The physician-patient relationship is an essential element of a cause of action for medical malpractice, but not for common law negligence. The law imposes upon all persons the duty to use reasonable care under the circumstances. Physicians are not exempt from this duty to non-patients even though the act or omission was committed while engaged in the practice of medicine. Of course, a duty of care is dependent upon foreseeability, as previously discussed. *See supra* at 428.

In two cases decided by this Court, the physician-defendant has been held liable for damages to a non-patient caused by the physician's common law negligence. In *Wharton Transport Corp. v. Bridges,* 606 S.W.2d 521, 526 (Tenn.1980), the Court held that the physician was liable to a non-patient who was injured as the result of a truck driver's negligence, where the physician was negligent in performing a physical examination of the truck driver and in certifying his fitness to the employer. In *Bradshaw v. Daniel,* 854 S.W.2d 865 (Tenn.1993), the Court responded to the same contention made by the physician-defendant in this case:

> The defendant contends that the absence of a physician-patient relationship negates the existence of a duty in this case. While it is true that a physician-patient relationship is necessary to the maintenance of a medical malpractice action, it is not necessary for the maintenance of an action based on negligence, and this Court has specifically recognized that a physician may owe a duty to a non-patient third party for injuries caused by the physician's negligence, if the injuries suffered and the manner in which they occurred were reasonably foreseeable.

*Id.* at 870. In *Bradshaw,* the Court reviewed cases from other jurisdictions in which the court held that the physician is under a duty to exercise reasonable care to protect non-

patients from dangers emanating from the patient's illness, the most common being the danger of becoming infected with a contagious disease. The Court quoted with approval the following decisions:

[I]n [*Hofmann v. Blackmon*, 241 So.2d 752 (Fla.Dist.Ct.App.1970) *cert. denied* 245 So.2d 257 (Fla.1971)], an action was brought against a physician by a child who had contracted tuberculosis as a result of the physician's negligent failure to diagnose the disease in his patient, the child's father. Reversing a summary judgment for the physician, the Florida District Court of Appeals held

that a physician owes a duty to a minor child who is a member of the immediate family and living with a patient suffering from a contagious disease to inform those charged with the minor's well being of the nature of the contagious disease and the precautionary steps to be taken to prevent the child from contracting such disease and that the duty is not negated by the physician negligently failing to become aware of the presence of such a contagious disease.

241 So.2d at 753.

Likewise, in [*Shepard v. Redford Community Hosp.*, 151 Mich.App. 242, 390 N.W.2d 239 (1986) *appeal denied* 431 Mich. 872, 430 N.W.2d 458 (1988)], a wrongful death action was filed by the mother of a child who was infected and died of spinal meningitis after the physician failed to diagnose the disease in his patient, the mother. Again, reversing a summary judgment in favor of the defendant on the issue of legal duty, the Michigan Court of Appeals stated that the

defendant had a physician-patient relationship with plaintiff. This was a special relationship with the one who allegedly infected Eric, leading to his death.... Because defendant had a special relationship with plaintiff we conclude that defendant owed a duty of reasonable care to Eric. As plaintiff's son and a member of her household, Eric was a foreseeable potential victim of defendant's conduct.

390 N.W.2d at 241.

Finally in [*Wojcik v. Aluminum Co. of America*, 18 Misc.2d 740, 183 N.Y.S.2d 351 (1959)], an action was brought by a woman who was infected with tuberculosis against the physician who discovered her husband had the disease, but did not inform her. The New York court held that the physician owed a duty to warn his patient's wife of the risks associated with contracting the disease and stated that

one who by reason of his professional relations is placed in a position where it becomes his duty to exercise ordinary care to protect others from injury or danger is liable in damages to those injured by reason of his failure to do so.

183 N.Y.S.2d at 358 (citations omitted).

*Bradshaw v. Daniel*, 854 S.W.2d at 871–72.

However, the instrumentality which caused the plaintiff's death in *Bradshaw* was not a contagious disease, but Rocky Mountain Spotted Fever, a disease which cannot be transmitted from one person to another but is contracted by humans through the bite of a tick. Persons occupying the premises where the disease was contracted are at risk because of the clustering characteristic of the infected ticks. The issue in *Bradshaw* was:

[W]hether a physician has an affirmative duty to warn a patient's family member about the symptoms and risks of exposure to Rocky Mountain Spotted Fever, a noncontagious disease.

*Id.* at 870. The Court held:

We, therefore, conclude that the existence of the physician-patient relationship is sufficient to impose upon a physician an affirmative duty to warn identifiable third persons in the patient's immediate family against foreseeable risks emanating from a patient's illness. Accordingly, we hold that under the factual circumstances of this case, viewing the evidence in a light most favorable to the plaintiff, the defendant physician had a duty to warn his patient's wife of the risk to her of contracting Rocky Mountain Spotted Fever, when he knew, or in the exercise of reasonable care,

should have known, that his patient was suffering from the disease.

*Id.* at 872–73.

These prior decisions require the conclusion that, in the practice of medicine, Dr. Simonton's duty is not limited, as a matter of law, to his patients. The question now is whether Pittman is included among those non-patients to whom the physician owed a duty, or as stated in *Bradshaw,* whether the injuries suffered by Pittman, and the manner in which they occurred, were reasonably foreseeable. *Id.* at 870.

■ The record establishes that the drug prescribed is exceedingly harmful to most persons not suffering from the condition for which it was prescribed. The package inserts delivered to Dr. Simonton by The Upjohn Company and the entry in the *Physician's Desk Reference* with which he was familiar, contained the following:

> The risks of hypoglycemia, its symptoms and treatment, and conditions that predispose to its development should be explained to patients *and responsible family members.* (Emphasis added.)

The issue being tested on this motion for summary judgment is the likelihood that an adult house guest of Dr. Simonton's patient would take the drug accidentally. If a reasonable person could foresee the probability of this occurrence, the law imposes a duty of reasonable care, care commensurate with the risk. Such reasonable care must be given meaning in relation to all relevant circumstances; the degree of foreseeability needed to establish a duty of care decreases in proportion to the magnitude of the foreseeable harm. "As the gravity of the possible harm increases, the apparent likelihood of its occurrence need be correspondingly less to generate a duty of precaution." W. Page Keeton, et al., *Prosser and Keeton on the Law of Torts,* § 31, at 171 (5th ed. 1984). The probability of harm, and thus the danger, that Micronase poses to persons other than those for whom it is prescribed is, according to the record, great. Consequently, the likelihood of its being ingested from a

person other than the patient becomes the significant factor for consideration.

The relevant circumstances of this case do not support the plaintiff's insistence that he was among those persons likely to be harmed, and, therefore, "entitled to legal protection at the hands of the defendant [physician]." *Lindsey,* 689 S.W.2d at 859. Those persons identified in Upjohn's literature to whom a warning regarding the properties and dangers of Micronase should be given were the patient and "responsible family members." Arguably, Pittman was a responsible member of the patient's family. However, responsible family members were included, not for their benefit but for the protection of the patient, to enable those persons caring for the patient to recognize the symptoms of hypoglycemia, which may render the patient unconscious, and take the prescribed emergency action. The Upjohn warning, which has been found to be sufficient under the circumstances of this case,[1] does not recognize a duty to the plaintiff.

The court in *Bradshaw* found the duty to warn extended to "identifiable third persons in the patient's immediate family." However, in *Bradshaw* the infected ticks posed an active, hidden danger to all persons on the premises. The ticks sought out their victims and no action was required by the patient or the potential victim to accomplish the injury. In the case before the court, the danger was benign. The Micronase did not constitute any danger to Pittman so long as it remained in its container. The warning required by the holding in *Bradshaw* does not recognize a duty to the plaintiff in this case. The Court of Appeals properly found,

> that an adult house guest will reach high upon a refrigerator, take down a bottle of prescription medication clearly belonging to someone else, and ingest several of the pills therein without the knowledge and permission of the owner of the prescription medication is not reasonably foreseeable.

The plaintiff has failed to "show that the injury was a reasonably foreseeable probability, not just a remote possibility...." *Doe v. Linder,* 845 S.W.2d at 178. Consequently,

1. See page 430.

the physician's duty to warn did not extend to the plaintiff, and the physician is entitled to summary judgment.

## IV

### Portland Prescription Shop— The Pharmacy

█ Portland Prescription Shop takes the position that it owed no duty to a non-customer user of an unavoidably dangerous prescription drug dispensed by it and, further, that it fulfilled the only duty owed its customer, to fill the prescription according to the physician's order.

█ If the only duty owed by the pharmacy was to fill the prescription correctly, there would be no duty owed to a non-customer because, obviously, the pharmacy would have no higher duty to a non-customer than to a customer. But, as stated previously, the law imposes upon all persons the duty to use reasonable care under the circumstances. *Supra* at 428. Pharmacists have a duty to exercise the standard of care required of the pharmacy profession in the same or similar communities. *Dooley v. Everett*, 805 S.W.2d 380, 385 (Tenn.Ct.App. 1990). The Court of Appeals in *Dooley* properly rejected the defense of learned intermediary where the pharmacist failed to warn a customer of the danger of one prescription drug interacting with another drug prescribed by the same physician. The court held that "whether the duty to discover and warn customers of potential drug interactions is included within the general scope of the duties a Tennessee pharmacist owes to its customers" was a disputed, material fact and reversed a summary judgment for the pharmacist. *Id.* at 385, 386.

The court in *Dooley* found that the statutory definition of the practice of pharmacy was helpful in determining the duty owed by a member of the profession. The court referred to T.C.A. § 63–10–101(d) and (e)(6), which are as follows:

(d) The practice of pharmacy in this state is declared a professional practice affecting the public health, safety and welfare and is subject to regulation and control in the public interest and concern that the prac-tice of pharmacy, as defined in this chapter, merit and receive the confidence of the public and that only qualified persons be permitted to practice pharmacy in this state.

(e) As used in this chapter:

. . . . .

(6) "Practice of pharmacy" means the practice of that profession concerned with the art and science of preparing, compounding and dispensing of drugs and devices, whether dispensed on the prescription of a medical practitioner or legally dispensed or sold directly to the ultimate consumer, and includes the proper and safe storage and distribution of drugs, the maintenance of proper records therefor, and *the responsibility of relating information as required concerning such drugs and medicines* and their therapeutic values and uses in the treatment and prevention of disease.

(Emphasis added.) The court further found in *Dooley:*

The pharmacist is a professional who has a duty to his customer to exercise the standard of care required by the pharmacy profession in the same or similar communities as the community in which he practices his profession.

*Dooley v. Everett,* 805 S.W.2d at 385.

Similarly, pharmacists themselves have recognized:

The increased complexity of pharmacotherapeutics and the accompanying adverse reactions to drugs and interactions between drugs have resulted in an expanded role for pharmacists as drug therapy counselors. A pharmacist's formal education stresses patient counseling as an integral role in health care. Leadership within the profession advocates continued expansion into new areas of patient education. A trend toward patient-oriented clinical pharmacy practice, which was opposed initially by many pharmacists, now appears to have firmly taken hold.

Brushwood, *The Informed Intermediary Doctrine and the Pharmacist's Duty to Warn,* 4 J.Legal Med. 349, 351 (1983).

█ The plaintiffs introduced proof concerning the practice and custom of other

pharmacies with regard to dispensing Micronase. Another pharmacy in Portland Prescription Shop's trade area provides its customers with the following precautions concerning the drug:

> If any of the information in this leaflet causes you special concern or if you want more information about your medicine or its use, check with your doctor, nurse or pharmacist. REMEMBER, KEEP THIS AND ALL OTHER MEDICINES OUT OF THE REACH OF CHILDREN AND NEVER SHARE YOUR MEDICATION WITH OTHERS.

The leaflet also warns customers to be on the lookout for hypoglycemia, describes hypoglycemia's symptoms, and informs the customer of steps to take should the symptoms appear.

■ Pursuant to the authority of T.C.A. § 63–10–102, the Board of Pharmacy of the State of Tennessee has promulgated certain rules and standards of practice. These rules provide:

> A pharmacist should, on dispensing a new prescription, explain to the patient or the patient's agent the directions for the use and a warning of all effects of the medication or device that are significant and/or potentially harmful. This communication should be performed in such a manner that will assure the proper use of the medication or device prescribed.

7 Tenn.Comp.R. & Regs. 1140–3–.03(13) (1991). Although the rules and standards of practice promulgated by the Board of Pharmacy do not necessarily establish the duty of care owed by the pharmacy in this case, they are relevant to the issue and may provide guidance in determining if there is a duty of care under the circumstances. *Cf. Lazy Seven Coal Sales v. Stone & Hinds*, 813 S.W.2d 400, 405 (Tenn.1991).

In this case, the pharmacy had been advised by the manufacturer of the potential dangers of Micronase. *Supra* at 429–430. It knew of the manufacturer's urging that the patient and the patient's family members be advised of the symptoms and dangers of complications that might arise from the use of Micronase. The prescription given by Dr. Simonton to the pharmacy did not include a warning to be placed on the label. The pharmacy took no action to alert the physician to the need for a warning and provided no warning itself. The pharmacy acceded to its customer's request that the drug be dispensed in a bottle without a child-proof safety cap without giving any warning of the dangers posed by Micronase.

The record shows that the duty owed Richards was greater than merely filling the physician's prescription correctly. As indicated by the evidence in the record, Micronase posed a danger to Richards even if taken according to the physician's order. The pharmacy's customer was not aware of that danger because she had not been advised by either the physician, who prescribed the unavoidably unsafe drug, or the pharmacy which dispensed the drug. A significant factor affecting the pharmacy's duty was the knowledge that no warning had been given by the physician. Under these circumstances, it was reasonably foreseeable that Richards was at risk of injury. Consequently, the pharmacy, as well as the physician, owed her the duty to warn.

The issue now is whether the duty to warn extended to the plaintiff in this case. Because of the significance of foreseeability in the law's imposition of duty, and because the dangers posed in this case by Micronase were equally foreseeable to the physician and the pharmacist, the discussion of the duty owed by the physician, *supra* at 433, is relevant, in principle, to the duty owed by the pharmacy. For the reasons discussed above, the plaintiff has failed to show that the injury was reasonably foreseeable. Consequently, the duty to warn of the danger posed by the drug did not extend to the plaintiff, and the pharmacy is entitled to summary judgment.

The judgment of the Court of Appeals granting summary judgment to each of the defendants is affirmed.

Costs are taxed to the plaintiffs.

ANDERSON, C.J., and DROWOTA, O'BRIEN and BIRCH, JJ., concur.