# IN THE COURT OF APPEALS OF TENNESSEE
## AT NASHVILLE

## HELEN CHASE v. ROGER SPRINGER

**Direct Appeal from the Circuit Court for Davidson County**
**No. 95C-2190     Walter C. Kurtz, Judge**

---

**No.  M1999-01038-COA-R3-CV - Decided June 22, 2000**

---

This is an appeal from summary judgment rendered in favor of the defendant in an action to enforce a California judgment pursuant to Tennessee Code Annotated section 26-6-101 *et seq.*  Plaintiff attempted to amend in order to assert breach of contract when Defendant answered the petition with a contest of in personam jurisdiction of the California court in the underlying judgment.  The trial court ruled that California lacked in personam jurisdiction and the proposed breach of contract amendment to the petition was denied.  Plaintiff appeals and we affirm the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court**
**Affirmed and Remanded**

CAIN, J., delivered the opinion of the court, in which KOCH and COTTRELL, JJ., joined.

Michael M. Castellarin, Nashville, Tennessee, for the appellant, Helen Chase.

Donald Capparella, Nashville, Tennessee, for the appellee, Roger Springer.

## OPINION

This appeal arises from an attempt to enforce a foreign judgment. On July 11, 1995, Appellant Mrs. Chase filed her petition pursuant to Tenn. Code Ann. §§26-6-101 *et seq.,* to enforce a judgment entered by the Superior Court of California in the amount of $87,642.00.  That judgment was entered March 24, 1993.  The petition lay dormant for two years in Davidson County Circuit Court until Mrs. Chase eventually effected service on Mr. Springer, who answered her petition on October 20, 1997, and alleged that the California court lacked personal jurisdiction over him so as to warrant full faith and credit under the United States Constitution and enforcement under the Tennessee statutes.  On March 17, 1998, Mrs. Chase moved to amend her petition to allege a breach of contract claim which served as the subject of the California default judgment.  On April 14 of that year, the trial court denied that motion.  Despite Mrs. Chase's argument that the amendment should relate back to the time of the filing of her original petition, the trial court found that her original

filing did not constitute a "pleading" sufficient for relation under Tenn. R. Civ. P. 3 and 15.03. Thus the trial court found her breach of contract claim to be time barred. On April 5, 1999, Mr. Springer moved for summary judgment, alleging that under Tenn. R. Civ. P. 56, no genuine issue of material fact existed and he was entitled to judgment on his claim that the California court lacked personal jurisdiction over him. For her part Mrs. Chase renewed her motion to amend and filed a motion for summary judgment on her original enforcement petition. In a lengthy memorandum and order, the trial court denied Mrs. Chase's motions and entered summary judgment on behalf of Mr. Springer. From these adverse actions of the trial court Mrs. Chase appeals.

The standard of review is clear in appeals such as the one at bar. No presumption of correctness attaches to decisions granting summary judgments because they involve only questions of law. *Hembree v. State,* 925 S.W.2d 513, 515 (Tenn. 1996). Thus, on appeal, we must make a fresh determination concerning whether or not the requirements of Tenn.R.Civ.P. 56 have been met. *Hill v. City of Chattanooga,* 533 S.W.2d 311, 312 (Tenn. Ct. App.1975). In our inquiry we consider the pleadings and the evidentiary materials in a light most favorable to the motion's opponent, and we must draw all reasonable inferences in the opponent's favor. *See Cowden v. Sovran Bank/Central South,* 816 S.W.2d 741, 744 (Tenn.1991); *see also Byrd v. Hall,* 847 S.W.2d 208 (Tenn.1993).

The trial court found that the California court lacked personal jurisdiction over Mr. Springer. Personal jurisdiction is a fact-sensitive creature. For the purposes of this inquiry only, Mr. Springer disputes none of those facts urged by Mrs. Chase to support personal jurisdiction in the California Superior Court. Thus, under the standard of review, we take as established all of the facts alleged by Mrs. Chase in the action to enforce, disregarding all countervailing evidence, to determine whether those facts entitle Ms. Chase to survive summary judgment. *See Byrd v. Hall, supra,* at 211. Tenn. R. Civ. P. 56.03.

Of the facts alleged in Ms. Chase's affidavit in the California court, the following are pertinent to the question of personal jurisdiction:

> 1. In May of 1990, in Oklahoma, Mr. Springer entered into an oral agreement with Ms. Chase whereby Ms. Chase would act as Mr. Springer's manager to develop, promote and advance his career.
>
> 2. Consistent with this agreement, Mrs. Chase allegedly promised to advance monies on Mr. Springer's behalf for the purpose of advancing and promoting his career.
>
> 3. These advances made on Mr. Springer's behalf , total $87, 642 and include, *inter alia*:
>
>> a. In June of 1990, $14,700 paid on Mr. Springer's behalf to Amythest Studio in Oklahoma
>> b. From June of 1990 to November of 1990, hotel expenses in the amount of $5291
>> c. From May of 1990 to April of 1991,

1.  restaurant expenses by credit card totaling $1775.85
2.  clothing, electrical equipment, flowers, kitchen supplies, and pharmacy totaling $8639.10
3.  auto expenses totaling $2752.04

d.  Cash advances via credit card in the amount of $2,900 between October and November of 1990;

e.  $2500 paid to Mr. Springer from Emmett Munley, paid from Nevada.

f.  The sum of $500 dollars paid by wire transfer from Western Union in California in December of 1990, and

g.  $36,178.40 in moving expenses incurred by Mrs. Chase in her October 1990 move from Oklahoma to California.[1]

3.  Shortly after this agreement was reached, Mr. Springer moved to Nashville, where he lived and incurred a large portion of the miscellaneous expenses alleged via credit card issued in the name of Mrs. Chase's husband Joseph.

In addition to the above facts, it is undisputed that Mrs. Chase, through her supervisor Emmett Munley, secured legal counsel for Mr. Springer. This attorney, Howard Rootenberg, negotiated a contract between Mr. Springer and MCA records. That contract lists as a party Mr. Springer "c/o Howard Rootenberg, 120 El Camino, Suite 210, Beverly Hills CA 90202." The execution of this agreement occurred in Tennessee. Mrs. Chase was not a party to that contract. It is undisputed that Mr. Springer made no general appearance to defend the California action.

Although Tennessee courts are required to give full faith and credit to valid foreign judgments, those foreign decrees are still subject to attack where, for instance, the forum state lacks personal jurisdiction over the Defendant. *See Biogen Distrib., Inc. v. Tanner*, 842 S.W.2d 253, 256 (Tenn. Ct. App. 1992); Art. IV §1 U.S. Const; Tenn. Code Ann. §26-6-204(c). In challenging the foreign judgment, the respondent must show that the court lacked jurisdiction under the law of the state where the judgment was rendered. *See Four Seasons Gardening & Landscaping, Inc. v. Crouch,* 688 S.W.2d 439, 442 (Tenn. Ct. App.1984).

California exercised jurisdiction allegedly in accordance with the state's long-arm statute. *See* Cal. Civ. Code §410.10 (West 1999). This statute authorizes the exercise of personal jurisdiction to the full extent permissible under the United States Constitution. Thus California's personal jurisdiction law closely tracks its federal counterpart.

According to the California Supreme Court:

---

[1]Despite alleging in her original affidavit that Mr. Chase caused her to move to California, Mrs. Chase states in her deposition that the move to California from Oklahoma was her choice made in response to Mr. Emmett Munley's offer of a management position in a bingo house in California.

A state court's assertion of personal jurisdiction over a nonresident defendant who has not been served with process within the state comports with the requirements of the due process clause of the federal Constitution if the defendant has such minimum contacts with the state that the assertion of jurisdiction does not violate "'traditional notions of fair play and substantial justice.'"

*Vons Companies v. Seabest Foods, Inc.,* 926 P.2d 1085, 1091 (Cal. 1996)(quoting *International Shoe Co. v. Washington,* 326 U.S. 310, 316, 66 S. Ct. 154, 158, 90 L.Ed. 95 (1945).)

In his extensive Memorandum Opinion the trial court reasoned;

In *Helicopteros Nacionales De Colombia v. Hall*, 466 U.S. 408 (1984), the court refined personal jurisdiction into specific jurisdiction and general jurisdiction. The court explained that when a controversy is related to or arises out of a defendant's contacts with the forum state, the forum exercises specific jurisdiction over the defendant. The court also explained that a court can exercise personal jurisdiction over a defendant whose contacts with the forum state do not relate to the controversy, but rather constitute continuous and systematic general contacts with the forum. This is [sic] type of personal jurisdiction is referred to as general jurisdiction.

In *Helicopteros*, the families of four (4) U.S. citizens filed a wrongful death suit against Helicopteros Nacionales De Colombia (hereinafter "Helicol"), a Colombian corporation, stemming from a helicopter crash in Peru. It was conceded by all sides that the controversy did not arise out of any of Helicol's activities in Texas. Therefore, the court addressed whether Texas could assert general jurisdiction over Helicol. Helicol did not have a place of business in Texas and was not licensed to do business there. However, Helicol's chief executive officer had traveled to Houston for contract negotiations. Helicol had purchased helicopters, equipment, and training services on a regular basis from Bell Helicopter, a Texas corporation, for substantial sums of money. Helicol sent personnel to Forth Worth for training by Bell Helicopter. Finally, Helicol had accepted in its bank account checks drawn on a Houston bank.

The court ruled that these contacts did not reach the level continuous and systematic contacts such that jurisdiction in Texas would be reasonable and just. *Id.* at 415-16. The single trip to Houston by the chief executive officer was clearly not continuous and systematic. In discounting the origin of the check accepted by Helicol, the court reiterated that the unilateral activity of another party is irrelevant to an examination of a defendant's contacts with a forum. Finally, the court held that the helicopters, equipment, and training services purchased from Bell Helicopter in Texas, even on a regular basis, was simply not enough to warrant personal

-4-

jurisdiction [to] Helicol in a cause of action unrelated to those purchase transactions. *Id*. at 418.

While the U.S. Supreme Court has continued to refine and clarify the limits of state court jurisdiction over out of state defendants, the cases above leave no doubt as to the appropriate outcome of this case. This is not a case of specific jurisdiction. The controversy does not relate to nor arise out of any of the Mr. Springers's contacts with California. Ms. Chase's cause of action is a claim for breach of a contract allegedly negotiated and entered into in Oklahoma. As part of the contract, Ms. Chase paid certain expenses for Mr. Springer. Mr. Springer incurred these expenses while he was in Oklahoma and Tennessee. Mr. Springer had no contact with California regarding this oral contract. The plaintiff's argument that because Mr. Springer incurred expenses which were paid by Ms. Chase after she moved to California is erroneous. *See Hanson; See Kulko; See Helicopteros.*

In order for the California court to have validly exercised personal jurisdiction over Mr. Springer, he must have had continuous and systematic general contacts with the forum such that the exercise of general jurisdiction would not offend due process. Ms. Chase asserts that Mr. Springer's recording contract with MCA Records, a California corporation, and his relationship with Howard Rootenberg, a California attorney, establish the required continuous and systematic contacts. When examined in light of U.S. Supreme Court precedent, the argument fails.

In *Helicopteros*, Helicol regularly purchased helicopters, equipment and training services from Bell Helicopters, a Texas company. Helicol even sent its employees to Texas for training. The court held that these contacts did not establish general jurisdiction. In the case at hand, Mr. Springer did enter a recording contract with a California corporation. However, the contract was negotiated and signed in Tennessee. Pursuant to the contract, Mr. Springer agreed to record music in Tennessee. Mr. Springer's attorney, Mr. Rootenberg, was only hired to negotiate a music recording contract. He traveled to Tennessee to meet with Mr. Springer and negotiate the contract. Mr. Springer's contacts with California are not nearly as continuous and systematic as Helicol's were with Texas, and therefore they would not support the assertion of general jurisdiction by California.

Ms. Chase also asserts that the [sic] her injury in California was foreseeable, and that Mr. Springer knew that she had moved when he continued to incur expenses which she paid. The plaintiff's logic mirrors that which was rejected in *World-Wide Volkswagen*. The test of foreseeability is not whether Mr. Springer could foresee that Ms. Chase could move to California. She could have moved anywhere, much the same as how an Audi could be driven from New York to Oklahoma or anywhere else. Foreseeability refers to whether the defendant could have reasonably anticipated being ha[u]led into court there.

The logic of the trial court reasoning is compelling under *Helicopteros Nacionales De Colombia S.A., et al. v. Hall*, 466 U.S. 408; 104 S.Ct. 1868; 80 L.Ed.2d 404 (1984).

Despite the lack of a forum's "general jurisdiction," a defendant may still be subject to the state's "specific" personal jurisdiction if the defendant has purposefully availed itself of forum benefits. However, for specific jurisdiction to lie, the controversy involving the defendant must "arise out of" those contacts with the forum. See *Vons,* at 1092 (quoting *Burger King v. Rudcewicz,* 471 U.S. 461, 473-4, 105 S.Ct. 2174, 2182-3, 85 L.Ed.2d 528 (1985).)

The above facts do not establish a genuine issue as to whether the California Superior Court had jurisdiction over Mr. Springer. In essence, if there was an agreement, it was for Mr. Springer to pursue a musical career with Mrs. Chase's financial backing. According to Mrs. Chase's allegations, in her contractual arrangement with Mr. Springer, she was cast in the active role, advancing monies and reimbursing for expenses incurred by Mr. Springer in the pursuit of his musical career. The bulk of this pursuit centered around Oklahoma and Tennessee through Mr. Springer's activities in those states, not through Mrs. Chase's payment of her credit card bills. These expenses include the $500 dollars wired to Mr. Springer from California. This payment exemplifies the problem inherent in Mrs. Chase's argument. The facts in the record show no activity on the part of Mr. Springer in the Forum state. Rather they show his passive receipt of benefits directed at him in Oklahoma and Tennessee from several points of contact in California, Oklahoma and elsewhere. The vast majority of expenses incurred have no connection with California. The majority of the credit card charges were actually incurred outside the state. They only obtained a connection to California through Ms. Chase's activity, i.e. paying the statement. Mrs. Chase's relocation expenses were actually incurred at her own instance. Even if they had not been so incurred, there is nothing in the record to show that she ever acted at Mr. Springer's direction in California. No active bookings took place in California. To urge that such a relationship would subject Mr. Springer to the power of a forum foreign to *him* offends the very notions of fair play and substantial justice which circumscribe the exercise of a court's jurisdiction *in personam*.

Mrs. Chase argues that Mr. Rootenberg's activities in California establish Mr. Springer's presence in the state. However, there is no proof in the record to suggest that Mr. Rootenberg ever *acted* on behalf of Mr. Springer. Although Mr. Rootenberg aided in the negotiation of a short-lived contract with MCA Records, the bulk of these activities including execution of the agreement took place in Tennessee. From our de novo review, we find it clear that Mr. Springer's contacts with California fall well short of the type of wide ranging systematic activity which would substitute for his physical presence in the state.

Mrs. Chase argues in the alternative that Mr. Springer is still subject to the specific jurisdiction of California by virtue of Mr. Rootenberg. She urges that the controversy concerning their alleged agreement springs directly out of the MCA contract negotiations. Mr. Rootenberg pursued no activity in California out of which a controversy could arise. The MCA contract negotiation and execution took place in Tennessee. Thus California lacks specific personal jurisdiction over Mr. Springer. In the absence of that jurisdiction Mrs. Chase's petition fails.

The issue concerning Mrs. Chase's motion to amend her complaint is best characterized by the trial court as follows:

> The plaintiff has also filed a motion for leave to file an amended complaint in order to include the underlying breach of contract claim with the petition to enforce the California judgment. When plaintiff filed this motion previously, it was denied. The Court ruled that the proposed amended complaint could not relate back to the filing of the original petition, because a petition to enforce a foreign judgment is not a pleading or complaint sufficient to toll the statute of limitations as contemplated by T.R.C.P. 3 or T.R.C.P. 15.03. Without the relation back, the breach of contract claim would have been barred by the six (6) year statute of limitations contained in Tenn. Code Ann. §28-3-109. As the breach of contract claim was barred, the amended complaint was futile.

Mrs. Chase's first motion to amend her petition to reflect a complaint for breach of contract was filed on March 17, 1999, a full five months after Mr. Springer had filed his answer alleging California's lack of personal jurisdiction. Amendments to pleadings should be generally granted. *See* Tenn. R. Civ. P. 15.01; *Harden v. Danek Medical, Inc.,* 985 S.W.2d 449, 454 (Tenn. Ct. App. 1998). However, when a motion to amend is filed after responsive pleadings have been filed, the decision to grant or refuse such motion rests within the sound discretion of the trial court, and will not be overturned absent an abuse of that discretion or a resulting injustice. *Ibid.; see also Fann v. City of Fairview,* 905 S.W.2d 167, 174(Tenn. Ct. App. 1994); *Wilson v. Ricciardi,* 778 S.W.2d 450, 453 (Tenn. Ct. App.1989).

As this Court stated in *Harden*:

> Factors the trial court should consider when deciding whether to allow amendments include "undue delay in filing; lack of notice to the opposing party; bad faith by the moving party, repeated failure to cure deficiencies by previous amendments, undue prejudice to the opposing party, and futility of amendment." *Merriman v. Smith,* 599 S.W.2d 548, 559 (Tenn.App.1979).

*Harden v. Danek Med. Group, supra,* at 454.

This record reveals that despite her knowledge that Mr. Springer resided in Tennessee, and despite the possible availability of remedy in Tennessee and Oklahoma as early as 1991, Mrs. Chase chose to sue in California, filing her complaint in August of 1992. After successfully obtaining a default judgment in 1993, she allowed that judgment to languish for two years before filing for enforcement in Tennessee. The enforcement action in turn lay dormant for yet another year until service was effected on Mr. Springer.

Although the trial court questioned the nature of a petition for enforcement under Rules 3 and 15.03, when this ruling is viewed in the above context with the criteria listed in *Harden*, we cannot

find an abuse of discretion. To allow amendment of the original petition would be to grant the holder of an invalid foreign judgment superior rights over a plaintiff who through simple negligence allowed the statutory period to run. In each case the cause would otherwise be time barred. In the former, as in the case at bar, manifest injustice would result.

The judgment of the trial court is affirmed for reasons stated herein and costs are assessed against Helen Chase.